THE QUINEBAUG RESERVOIR COMPANY *vs.* THE TOWN OF
UNION.

THE HAMILTON WOOLEN COMPANY *vs.* THE TOWN OF UNION.

First Judicial District, Hartford, October Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Water-power created by a dam ·in this State is taxable here as real
estate, although transmitted to and used in an adjoining State.
Whether such water-power can be taxed at a valuation based on its use
in the adjoining State, *quære.*
General Statutes, § 3850, providing for the listing and assessment of
water-power in the town where it is appropriated and used, rather
than in the town where the reservoir or pond and dam creating it
may be located, applies only to Connecticut towns.
The failure of the assessors to give the notice required by General
Statutes, § 3812, of additions made by them to a tax list, is waived
by the taxpayer's appeal to the board of relief.

Argued October 2d—decided November 1st, 1900.

APPLICATIONS in the nature of appeals from the doings of
the board of relief of the town of Union, brought to the Su-
perior Court for Tolland County, and heard together by the
court, *Ralph Wheeler, J.,* on an agreed statement of facts,
and judgment rendered in each case for the town, from which
the taxpayers appealed for alleged errors in the rulings of
the court. *No error.*

The Quinebaug Reservoir Company is a Massachusetts
corporation. In 1846, being the owner of certain land sur-
rounding Mashapaug Pond, with a dam and water privileges,
in Union, in this State, it sold and conveyed them to one
Leland "his heirs and assigns on the following conditions,
that said Reservoir Company reserve to themselves, their
successors and assigns forever, the full and absolute and en-
tire control of the water in Mashapaug Pond, so-called, as a
reservoir for factories and mills on the stream and river be-
low said pond, at any and all times when there shall not be a
surplus or waste of water running over the dam at the lower

end of the mill pond, so-called; also said Reservoir Company reserve, as aforesaid, the right of raising the water in said Mashapaug Pond and mill pond to any height they may desire, and to enable said company to exercise such control, and to raise the water in said ponds as aforesaid, they reserve as aforesaid, the right to enter any part of the premises or buildings at any and all times, without molestation or hindrance, and erect such dams thereon, or to raise the dam now thereon, as they think proper, and a right to take gravel, earth, or other materials from the premises for erecting such dams, flumes, or gateways on the premises as may be necessary to exercise the full control of the water as aforesaid, and a right to enter the premises at any and all times, by such person or persons as they may employ to let out said water, or to shut gates to stop the same, and it is understood and agreed by the parties, that at all times, so soon as the water in the ponds aforesaid shall cease to flow or run to waste, over the dams at the mills, upon the premises, all right of the said Leland, his heirs or assigns, to the use of the water by or through any gate or aperture below the top of said dam, shall cease and be suspended until by the raising of said pond by rains or otherwise, the water shall again run in waste over said dam, and for any use of the water in said pond by the said Leland, or any person or persons, with or without the consent of the said Leland, or other persons occupying the same contrary to and in violation of the terms herein stated and agreed to by the parties, the said Leland, and all or any person or persons occupying the same, shall forfeit and pay to any person or company, being a member of said Reservoir Company, all damages sustained in consequence of such use of the water, and for the security of the payment of any such damages a lien is hereby reserved upon the premises, in so much as that if such occupant shall neglect or refuse to pay such damages on demand, as soon as the same shall be legally ascertained, this conveyance shall be void and of no effect; it is however understood and agreed by the parties hereto, that in all cases wherein the said Reservoir Company shall have occasion to use the water of said ponds after it shall

cease to flow over the dam near said mills, as hereinbefore stated, such use by said company shall be through the gates of said Leland, his heirs or assigns, and jointly for his or their use, *provided* that by such joint use the said Reservoir Company shall be enabled to obtain precisely the quantity of water they shall require, and at such times as they shall direct, the whole of such joint use as to quantity of water and time of its use, to be under the control of the said Reservoir Company; it is understood that the buildings on the premises are hereby conveyed, subject to the conditions and reservations aforesaid."

After this conveyance, Mashapaug Pond was divided into two ponds, and the company has flowed the upper one to the height of four feet, for the purpose of accumulating a water supply for use by mills in Massachusetts owned by third parties. In 1899, it made a return to the assessors of Union of its property taxable in that town, described as : —

" Flowage over lands known as lower Mashapaug Pond; bounded north by highway . . . 50 acres at $5 per acre, $250.

" Flowage over lands known as upper Mashapaug Pond; bounded north by lands of Martha Crawford . . . 50 acres at $5—$250."

The assessors added to this list " ten acres of land (Mashapaug Pond as it was before 4 feet were added to the dam) at $5—$50 ; dams and water privileges, $8,000."

The Hamilton Woolen Company is also a Massachusetts corporation, and owns mills in Massachusetts and a right to flow upper Mashapaug Pond, which it in fact flowed, to a height greater than that at which it was flowed by the Quinebaug Reservoir Company. It made a return to the assessors of " Flowage above rights of Quinebaug Reservoir Company about Mashapaug Lake; bounded north by lands of Mrs. Martha Crawford . . . 25 acres at $5 per acre—$125." To this list the assessors added " Dams and water privileges, $3,430."

Neither company was notified of such additions, but each casually learned of it, and appealed to the board of relief, before whom it was duly heard.

Any question whether the additions—if the items specified were legally subjects of taxation—were excessive as to the amount of valuation, was waived.

*Charles Phelps* and *John M. Cochran*, for the appellants (plaintiff).

*Joel H. Reed* and *William A. King*, for the appellee (defendant).

BALDWIN, J. General Statutes, § 3827, provide that all property, not exempted, shall be liable to taxation, and that all real estate shall be set in the list of the town where it is situated. The conveyance by the Quinebaug Reservoir Company to Leland made him the owner in fee of certain lands, and reserved to it a right issuing out of those lands, which was perpetually charged upon them in favor of the company and its successors and assigns. This right was an incorporeal hereditament, and real estate. All real estate, whether corporeal or incorporeal, has a fixed *situs*. This hereditament, in the eye of the law, was situated in the town of Union, because the land out of which it issued was situated there. The Company made out a tax list, embracing it, which was returned to the assessors of that town. It was described in this list as "flowage over lands" which were particularly bounded and identified. It is not disputed that the acreage of the lands subject to the easement was underestimated by ten acres. The only question raised is as to the right of the assessors to add, as they did, the item "dams and water-privileges."

The deed of 1846 shows that there was then a dam upon the lands, and it is agreed that the company has always used its water-privilege by flowing them. For this real estate the plaintiff was taxable in Union, unless it can claim some statutory exemption.

It is contended that such an exemption is found in General Statutes, §§ 3849, 3850. These provide that water-power used by the owner in the same town in which the works and

water-course creating it are located, shall be listed for taxation there as incidental to the machinery operated by it, and not separately as distinct property, and if used by a lessee, the owner shall be taxed upon it at a valuation based on its net rental; but that where it is used in a different town, the land occupied by such works and water-course and by the increased flowage due to them, shall be listed for taxation in the town where these are located, against the owner of the power, at what would be its fair valuation for agricultural purposes, if not so occupied, but the power shall be listed for taxation in the town where it is used; and that in estimating its incidental value to the machinery operated by it, or its net rental value, the amount assessed elsewhere shall be deducted from the value of the land. A comparison of § 3850 with the original statute upon which it is based (Public Acts of 1869, p. 344, Chap. 131), shows that the deduction last mentioned is really meant to be one of the valuation of the land from the valuation of the power.

Statutes regulating taxation in towns are to be construed as applicable only to towns in the State enacting the law, unless a contrary intention is expressed. There is nothing in §§ 3849, 3850, to indicate that it was designed to relieve any real estate situated in Connecticut from taxation at its full value. Section 3849 contemplates the case of a water-privilege, the only use of which is in the town where the water-power is created. Section 3850 contemplates the case of a water-privilege created in one Connecticut town and used in another. Neither covers the case presented by the Quinebaug Reservoir Company.

When water is artificially stored upon land so as to create mechanical power by its fall, the necessary result is to bring into existence a new element of value. If the land thus used for storage purposes would be more valuable for other purposes, the value gained is less than the value lost. If, on the other hand, the power created has a value exceeding that of the land occupied, the taxable resources of the State in which that land is situated are increased. Such a use of land may, so long as it is continued, practically extinguish the value

of the land for any other purpose than that of sustaining the artificial burden to which it has been thus subjected. In such case, under our system which makes all real estate taxable by the towns in which it is situated, we should expect that either the value of the power or so much of it as equals that of the land if left in its natural condition, would be made taxable in the same way in which this land had been before. Such is the practical effect of the law, as we have construed it, and its enactment was fully within the competence of the General Assembly. The power, in whatever State it may be used, came into existence and is now maintained under the protection of the laws of Connecticut, and its owner, wherever he may belong, is taxable upon it here. *Winnipiseogee Lake Mfg. Co.* v. *Gilford*, 64 N. H. 337, 10 Atl. Rep. 849. Not to tax it would be to discriminate in favor of the owners of water-privileges as against all other proprietors of real estate. *Cheshire* v. *County Commissioners*, 118 Mass. 386.

We have no occasion to inquire whether it can be taxed at a valuation estimated with reference to its use in Massachusetts. The appeal is based, not upon the valuation given by the assessors to the item which they added, but on their right to make the addition at all.

The omission to give the company the notice of this addition, required by General Statutes, § 3812, was waived by its appeal to the board of relief.

The appeal taken to this court by the Hamilton Woolen Company rests on substantially the same grounds as that of the Quinebaug Reservoir Company, and must fail for the same reasons.

There is no error in either of the judgments appealed from.

In this opinion the other judges concurred.