## THE HAZARD POWDER COMPANY vs. THE TOWN OF ENFIELD.

First Judicial District, Hartford, January Term, 1908.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

General Statutes, § 2344, provides that under the circumstances therein described, water-power which "is used by its owner" shall be set in his tax list and assessed as an incident to the machinery operated by it, and not as distinct property. *Held* that water-power owned by the plaintiff and connected with its powdermill plant, for the operation of which it could be made available by merely hoisting the gates, was "used by its owner," within the meaning of that expression in § 2344, and was therefore to be taken into account in fixing the value of the plaintiff's mills and machinery, although at the date of the assessment and for some months prior thereto work in the mills had been discontinued with a bona fide intention of closing the plant permanently.

The general purpose of §§ 2344 and 2345 is to prescribe the manner in which, and the place where, owners of water-power shall be assessed for it, under the different circumstances which may exist as to its creation and use. Water-power "used by its owner" for running his own mills is to be valued as an incident to the machinery, while water-power "leased from its owner" is to be valued as a thing apart and upon the basis of its net rental.

Argued January 14th—decided March 5th, 1908.

APPLICATION in the nature of an appeal from the refusal of the board of relief of the town of Enfield to reduce the valuation placed by the assessors on the plaintiff's property for purposes of taxation, taken to and tried by the Superior Court in Hartford County, *Case, J.;* facts found and judgment rendered reducing the assessors' valuation by nearly $88,000, and appeal by the defendant. *Error and new trial ordered.*

On October 30th, 1905, the plaintiff filed with the assessors of the defendant a sworn list of the taxable property belonging to it on the first day of October, 1905, as follows: Dwelling-houses with buildings and lots appurtenant, $14,000; 460 acres of land, $15,900; mills, manufactories, $50,000; one horse, $25; investment in mechanical

and manufacturing operations, $7,000; total $86,925. The assessors accepted the valuation placed by the plaintiff upon each of the items except mills and manufactories, and investment in mechanical and manufacturing operations. These they increased, assessing the former at $130,000 and the latter at $20,000, making the total assessment $179,925.

The plaintiff appealed to the board of relief, who refused to reduce the assessment, and this appeal was taken from their action.

For many years prior to 1904 the plaintiff had owned and operated two plants used for the manufacture of gunpowder, both situated in the town of Enfield. One of these was called the Scitico plant and the other the Hazardville plant. They embraced an extensive system of ponds, dams and waterways, and other adjuncts necessary to run the mills and machinery by water-power, together, when fully equipped, with a number of mills, buildings and machinery adapted to the especial needs of the company's business. The system of dams, ponds and canals by which the water-power was secured, was wholly within the defendant town. In 1904 the plaintiff discontinued work at the Scitico plant, with the bona fide intention of permanently closing its works there. They have never since been operated. Early in 1905 it, with the same intention, discontinued work at the Hazardville plant, except that one branch of the work was continued until after October first, to dispose of accumulated material for shipment to another powder factory.

The court ruled that as the mills were shut down with the bona fide intention on the part of the plaintiff to discontinue work there, the water-power connected with the plants was not to be considered in fixing the value of those plants for assessment, and reduced the valuation of the assessors to $92,157.03. The defendant's appeal assigns as error this ruling, and certain rulings in the admission of evidence.

*Charles H. Briscoe* and *Charles E. Perkins,* for the appellant (defendant).

*Theodore M. Maltbie* and *William H. Leete*, for the appellee (plaintiff).

THAYER, J. The plaintiff's list, as given in to the assessors in 1905, contained the same items of real estate which were contained in its lists of the two preceding years,—the same dwelling-houses with appurtenant lots, the same 460 acres of land, the same mills and manufactories. As the dams, canals, reservoirs and ponds creating the water-power by which the mills had been operated, are situated in the same town as the mills, the assessors, as had been done in the previous years, treated the water-power as connected with the mills, and assessed it as incidental to the machinery. This was correct, admittedly, under General Statutes, § 2344, had the mills been in operation ; and it excluded any further taxation of the land occupied by such dams, canals and ponds, or the water-power connected therewith. If, however, the assessors were wrong in treating the water-power as incidental to the mills and machinery and in valuing it as a part thereof, then, in connection with the land whereon the works creating and reserving it are situated, it was liable to assessment as separate and distinct property. *Quinebaug Reservoir Co.* v. *Union*, 73 Conn. 294, 297–299, 47 Atl. 328. The court refused to value it as connected with the mills and machinery, and neglected to assess it separately as distinct property. It would thus escape taxation entirely, and to avoid this result there must be a new trial.

Section 2344 provides that " when water-power; created or reserved in any manner by works wholly located in the same town in which it is appropriated and used, is used by its owner, the whole shall be assessed and set in the list as incidental to the machinery which is operated by it, and not separately as distinct property ; and when such power, or any part thereof, is leased from its owner, it shall, to the extent to which it is so leased, be assessed and set in his list at its fair valuation, based upon its net rental." The ground upon which the court refused to assess the water-

power as incidental to the machinery, was that, on October 1st, 1905, the date as of which the assessment was made, it was not used by its owner. It is true that it was not in use actually operating the mills and machinery, but it was not disconnected from them and was capable of such use by hoisting the gates. It was supplying the power for their operation as truly as though actually operating them, and thus was as much an incident of the mills and their machinery as when actually operating them. It added to the market value of the mills, the same as it would if they were in operation. It was thus as effectively appropriated by the plaintiff to its own use in connection with its mills as when they were in operation. If the assessment depended upon the actual use of the water-power in operating the machinery, then any temporary stoppage of the mills on the first day of October would render an assessment impossible. When the owner stops his mill, whether for a short time or with the intention of permanently discontinuing its work, there would seem to be no good reason for assessing the water-power and works by which it is created, as disconnected from the mill, and the mill as disconnected from its power. That the statute had no such purpose is reasonably clear from its language. The general purpose of §§ 2344 and 2345 is to provide the manner in which, and the place where, owners of water-power, under the different circumstances which may exist as to its creation and use, shall be assessed for it. Section 2345 applies to cases where the power is created and reserved in one town, and applied and used in another. Section 2344 applies to cases where the power is both created and used in the same town. The particular language now in question is used to designate an owner who appropriates and uses the water-power in connection with his own mill and machinery, as distinguished from an owner who leases the water-power to others to be applied and used in connection with theirs, a different way of valuing the water-power being provided in the two cases. The language is apt for this purpose, and we think that an owner who has the

water-power applied to his own mills, so that the same is available for immediate use in connection therewith, is using it, within the meaning of the statute, so that it should be assessed and set in his list as incident to the machinery, although the mills and machinery may at the date for assessing it stand idle, whether it be his intention that they shall remain permanently so or not.

After mills in such cases have gone to decay, or been dismantled so that they are no longer liable to assessment as "mills and manufactories," the water-power, not then being incident to any machinery, could only be assessed as incident to the lands and works by which it is created. In the present case the evidence, which is made part of the record, shows that nothing had been done toward dismantling the mills at the date of the assessment. The water-power should have been considered, therefore, as incident to the machinery in valuing the mills and manufactories.

The exceptions to rulings in the admission of evidence need not be considered. Those rulings were due to the principal one, that the water-power was not to be considered in valuing the plant. The questions are not likely to arise upon a retrial.

The defendant claimed that the plaintiff's appeal did not vacate the assessment, and one ground of the present appeal is that the court overruled that claim, and, without evidence, found that $20,000 for the item, "investment in mechanical and manufacturing operations," was an over-assessment. It does not appear from the record that the claim of law was overruled. It does appear that evidence bearing upon the amount of this investment was received upon the trial, apparently without objection. The record, therefore, discloses no action of the court as regards this item which was injurious to the defendant.

There is error and a new trial is ordered.

In this opinion BALDWIN, C. J., HALL and PRENTICE, Js., concurred.

HAMERSLEY, J. (dissenting). A mere difference of opinion in respect to the precise sum representing the value of real estate, such as occurs of necessity in all valuations of this nature, cannot give to a taxpayer the right to apply to the Superior Court for the equitable relief provided for in this action. Still less can this court set up its opinion as to valuation against that of the Superior Court, nor can it for that purpose speculate as to the degree of weight that may have been given by the Superior Court to one or another element of value proper to be considered in arriving at a valuation which must be reached as a whole in view of elements of value that are incapable of separate valuation.

In the present case the difference of opinion between the taxpayer and the assessors represents a sum nearly equal to two thirds of the assessors' valuation. It is manifest that this difference represents not only the ordinary wide range of judgment, but also a radical error as to fact or law, or both ; and such is concededly the case.

The subject of valuation is a manufacturing plant run by water-power, to be valued as a whole, including land, buildings, machinery, driving-wheel, water-supply, dams, canals, and so forth. The taxpayer contends that on October 1st, 1905, the manufacture of gunpowder (for which purpose the plant had been constructed with features of construction peculiar to and valuable only for that purpose) had been substantially and permanently abandoned ; the assessors deny this, and contend that on that date the plant was still a going concern. This was the controlling issue before the Superior Court. If the taxpayer was right in this, the assessors' valuation was manifestly excessive and illegal, and the taxpayer was entitled to the equitable relief asked. The Superior Court has found this fact as claimed by the taxpayer, and this finding is conclusive.

Upon the trial the defendant claimed that this fact of abandonment being found, it was the duty of the court to determine the amount of water-power used by the plaintiff prior to the abandonment, and the entire amount of water-

power that the plant was capable of creating, and to determine, apart from and independent of the works and structures of the plant, the value of water-power or motive force as a marketable commodity which had been created and which was capable of being created at the plant, and to consider these values thus ascertained as material elements to be included in the valuation of the plant. This claim the court properly overruled. Such a method of valuing the plant as a whole is obviously impracticable and contrary to the true intent and meaning of the law. As I read the record, this question of law, stated in paragraph 10 of the finding, is the only substantial question of law presented in the appeal which the court appears to have decided adversely to the defendant. My associates, however, think that it sufficiently appears from the record that the court further held and ruled as a matter of law that the plant not being in operation on October 1st, 1905, and no water-power being in fact then used, the statute forbids, in the valuation of the plant as a whole, any consideration whatever of the fact that the plant is so constructed as to be capable of creating water-power, and that the court accordingly not only considered the fact that the manufacturing business for which the plant was constructed had been abandoned, but excluded entirely as an element of value the fact that the plant was adapted to and capable of creating water-power. I cannot so read the record, and fail to find justification for imputing such a ruling to the court. On the contrary, the record (notwithstanding some want of clearness in the finding as framed) seems to me to indicate that the court did value the plant as one capable of creating water-power, and weighed this element of value in determining its valuation of the plant as a whole. For this reason I cannot concur in granting a new trial.