SLATERSVILLE FINISHING CO. *vs.* ALBERT S. GREENE ET AL., ASSESSORS OF TAXES.

JUNE 27, 1917.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, and Baker, JJ.

(*1*)    *Taxation.    Waters.    Flowage.    Mill Privileges.*

Whether it be regarded as based on the right of eminent domain or as a legislative regulation of the common right of the different riparian proprietors to use the waters of a stream, the so-called "Mill Act" does not work the destruction of the property which may be invaded in accordance with its provisions, but the statute contemplates that the property submerged shall remain as a valuable possession of the owner even though he has been deprived of its unobstructed enjoyment.

(*2*)    *Taxation.    Waters.    Flowage.    Mill Privileges.*

On a petition for relief against a tax, it appeared that petitioner was the owner of a parcel of land with a dam and mill privilege, and of another parcel lower down the stream where it had erected a dam, thus flowing out the mill privilege on the first parcel.

*Held,* that without reference to the value of the added power which the use of this first parcel had enabled petitioner to obtain at the lower parcel, the valuation of the first parcel made by the assessors of taxes

should not be disturbed on the ground that because petitioner had seen fit to employ this land for purposes which were either more or less profitable than that for which it was suited, the petitioner had in that way destroyed certain elements of value which formerly pertained to it. In no proper sense could any of its elements of value be said to have been destroyed.

(*3*) *Water Power and Rights. Taxation.*

Water power and water rights are not independently taxable; but as appurtenant to and an incident of some land. Land should be taxed with all its elements of value in the town where it is situated. If land upon a stream has such topography either natural or artificial as to give to the land the capacity to control the current of the stream, thus creating water power, these circumstances enhance the value of that land and furnish a basis for taxation, and this is true whether that capacity is employed to create water power to be used on that land or upon other land in another town or another State and also if such capacity of the land is not employed at all. If water power thus created is conducted to mills situated elsewhere and there applied, that circumstance may reasonably be regarded as increasing the value of the mills receiving such power and may be considered in the taxation of such mills, but no element of value is thereby taken from the land where the power is created and transferred and made appurtenant to the mills where the power is used.

PETITION for relief against assessment of tax. Heard on agreed statement of facts. Petition denied.

SWEETLAND, J. This is a petition brought under the provisions of Section 15, Chapter 58, Gen. Laws 1909, for relief against a tax assessed against the petitioner's ratable estate in the town of Burrillville. The petition has been certified to us upon an agreed statement of facts.

By said statement it appears that on August 1, 1910, the petitioner duly brought in before the assessors of said town an account of its ratable estate in said town including a parcel of land described in said account as follows: " Slatersville Finishing Company, Slatersville, land lying southerly of the highway leading from Nasonville to Slatersville, bounding westerly by the Douglas Pike, and by Inman Road, so called, on the east — $500."

The assessors assessed said parcel as follows: " Slatersville Finishing Company, Slatersville, land, mill privilege and water rights, formerly the Inman mill privilege, lying southerly of the highway leading from Nasonville to Slatersville, bounding westerly by the Douglas Pike, and by Inman Road, so called, on the east — $5000." The petitioner paid under protest so much of said tax as was assessed upon the valuation of said parcel in excess of the valuation set out in the petitioner's account.    In said agreed statement it appears that said parcel was situated upon a stream of water the name of which is not given in the statement; that on said parcel was formerly located a mill known as the " Inman Scythe Works," the use of which was discontinued and which fell in ruins many years ago; and that there was a dam, waterfall and mill privilege connected with said land.    The parcel was sold in January, 1860, by Ezekiel Daniels and others to John F. and W. S. Slater, who are the predecessors in title of the petitioner, the Slatersville Finishing Company.    Either said Slaters, or the " Slatersville Mills " which succeeded them, erected or raised lower down on said stream at Slatersville in the town of North Smithfield a dam, thus creating a mill pond extending back over said stream into the town of Burrillville and flowing out the Inman mill privilege and water rights, so that there is no fall of water there when the Slatersville dam is full. At and before the time of the raising of said dam and the flowing of said land, said land was assessed for its value as a mill privilege, and it is agreed that such value was not less than $5,000.    If the elements of value attributed to said land by the assessors ought not to have been considered by them in fixing the valuation at the time of said assessment it is agreed that the value of said land for the purposes of taxation was $500.

The petitioner contends that in this matter the court should adopt one or the other of two views; and that in

accordance with either the petitioner should have the relief which it seeks.  Its claim is that by the erection and use of the dam at Slatersville, either said mill privilege and water rights in Burrillville have been destroyed as elements of value to be considered in assessing said land in Burrillville, or said privilege and water rights have become a part of and have increased the value of the water rights appurtenant to the mill at Slatersville in the town of North Smithfield and are only taxable there.

In support of its position that said mill privilege and water rights no longer exist as elements of value in the parcel of land under consideration the petitioner relies chiefly upon language employed in certain cases dealing with claims for damages made by the owners of lands which have been permanently submerged through the construction of public works.  In some of the cases cited there was a mill privilege upon the land flowed; in others there was not.  In no case is the question of taxation involved.  In each case the court was considering whether because of the impairment or destruction of the owner's beneficial use of the land or mill privilege he should be entitled to compensation under constitutional requirements that just compensation shall be paid to owners of property taken for public use.  We will briefly consider the cases cited by the petitioner upon this point.

In *People* v. *Canal Appraisers,* 13 Wend. 355, it appeared that, in the course of construction for the improvement of canal and lock navigation, the State of New York had built a dam across the Hudson River at Troy. Thereby a waterfall belonging to the relator situated on a branch of the Mohawk River, tributary to the Hudson above said dam, had been permanently overflowed.  In these circumstances the court held that there had been a " taking " of said waterfall for public use and the relator should have compensation.  In *Velte* v. *U. S.,* 76 Wis. 278,

and in *Pumpelly v. Green Bay Co.,* 13 Wall. 166, the respective plaintiffs were seeking compensation for the permanent flowing of their lands through the erection of dams as part of public works for the improvement of the Fox and Wisconsin rivers. In each case it was held that the plaintiff's use of his land had been destroyed and that the flowing constituted a " taking " of the land within the meaning of the constitution. The petitioner cites *Hatch v. Dwight,* 17 Mass. 289. The decision in that case upon analysis does not support the view that when a mill privilege has been flowed out by the raising of a dam below it on the same stream the mill privilege is destroyed as an element of value in the land to which it was attached. The court held that the owner of a privilege so overflowed was entitled to an action for his damages and approved an assessment of damages amounting to yearly interest upon the value of the privilege as it was before obstruction. This is by no means an authority for the contention that a privilege when flowed out is destroyed. The case proceeds upon the theory that the owner of the privilege had been deprived of its use, which use, in a sense, had been taken by the owner of the dam lower down and for such taking he should pay an annual compensation while the taking continued. It cannot with reason be urged from this that the value of the privilege as an incident of the land had been destroyed and should be disregarded in negotiation for the sale of the land, or that the assessors of Northampton, where the land was situated, could not properly consider this element in placing a valuation upon said land for the purpose of taxation.

For the promotion of manufactures legislatures in most of the States have enacted so-called " Mill Acts " giving to a riparian proprietor upon a stream, where water power may be utilized, the right to increase the impelling force of the current at his land by the erection

of a dam and the setting back of the water of the stream beyond the limit of his own land and upon that of a proprietor above with provision for compensation in damages and with the restriction, generally expressed in the act, that a proprietor cannot flow back and obstruct the operation of a mill privilege above which has already been established by authority of law. This restriction is not expressed in the Rhode Island Act. Chap. 148, Gen. Laws 1909, amended by Pub. Laws, Chap. 697. This court, however, has held that our mill act should receive a reasonable construction and that it does not authorize the owner of an unoccupied privilege to erect thereon a dam and mill and then to flow out an occupied privilege above. *Mowry* v. *Sheldon,* 2 R. I. 369.

The constitutionality of these mill acts has frequently been questioned. Their constitutionality has generally been supported; sometimes on the ground that the flowing out of the land above was a taking for public use under a delegation of the State's right of eminent domain. Perhaps the constitutionality of these acts is better supported on the ground that it is within the power of the legislature to regulate the manner in which the rights of riparian owners may be asserted and enjoyed with due regard to the interests of all and to the public good. *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9.

(1)    Whether it be regarded as based on the right of eminent domain or as a legislative regulation of the common right of the different riparian proprietors to use the waters of a stream, such act does not work the destruction of the property which may be invaded in accordance with its provisions. The statute contemplates that the property submerged should remain as a valuable possession of the owner even though he has been deprived of his unobstructed enjoyment. Although the owner may elect to have his damages in gross, the Rhode Island Act provides for the appraisement of the damages that the owner of

land overflowed ought yearly to receive and recover from the owner of the dam below, his heirs and assigns until five years after the dam shall be removed by its owner, his heirs and assigns. Similar provisions are contained in all the acts of other States which we have examined. The case of *Quinebaug Reservoir Co. v. Union,* 73 Conn. 294, we shall consider later in its bearings upon the other branch of the petitioner's claim. With reference to the point with which we are now dealing, *viz.,* as to the taxable valuation of lands which have been submerged to increase the water power at a mill site lower down on a stream, the court said, that under the system which makes all real estate taxable by the town in which it is situated the court would expect that either the value of the power created by submerging the land or so much of it as equals that of the land if left in its natural condition would be made taxable in the same way in which the land had been before.

Many of the questions, which might arise when the land submerged and the land on which the dam is located belong to different owners, are not presented in the case at bar where the petitioner owns both parcels of land. The value of land depends upon its capacity for improvement. The elements of its value may be its fertility, the minerals in its soil, its location, the configuration of its surface and many other circumstances, one or more of which may be incident to a certain tract of land. In estimating its value for the purpose of sale or of taxation all these incidents should be considered and the element or elements of value which lead to the most profitable form of improvement fixes the proper valuation of the land. The owner may not see fit to improve his land at all. He may put it to uses which are much less profitable than others for which it is suited. He cannot thereby lessen its valuation for the purpose of taxation. Generally the chief element of value of a parcel of land on one of the

principal streets of the city of Providence is its capacity
for profitable use as the location of a building for busi-
ness purposes. The owner of such parcel may permit it
to remain unimproved, he may use it in a manner which
produces little return, but the assessors of taxes would be
justified in assessing it upon a valuation based upon its
favorable location and its desirability for building pur-
poses. The petitioner in the case at bar is the owner of
a parcel of land admittedly of the value of $5,000 in view
of its possible use as a mill site. If the petitioner made
no use of this parcel it could not claim that a valuation
of $5,000 was excessive. In the furtherance of its busi-
ness it finds it profitable to employ this $5,000 tract of
land as part of its works to increase its water power at
Slatersville. It is fair to presume that the added water
power at Slatersville which is obtained by this use of the
land is of greater value to the petitioner than any return
which it would obtain from the use of the land simply as
a mill privilege; and the capacity of the land to produce
water power in this way to be used at Slatersville is an
element of greater value than its capacity for producing
water power to be used on the land itself in Burrillville.
In accordance with the suggestion made by the Connecti-
cut court in *Quinebaug Reservoir Co.* v. *Union, supra,* it
might be said that either the full value of the power so
obtained at Slatersville through the use of this land or
so much of that value as equals the value of the land if it
had been left in its natural condition should be made
(2) taxable in the same way in which the land has been taxed
before. However that may be and without reference to
the value of the added power which the use of this land
has enabled the petitioner to obtain at Slatersville, the
valuation of the land made by the assessors should not
be disturbed on the ground that because the petitioner
has seen fit to employ this land for purposes which are
either more or less profitable than that for which it

27

surely is suited the petitioner has in that way destroyed
certain elements of value which formerly pertained to it.
It is true that the petitioner has submerged the land and
concealed it from view but in no proper sense can it be
said to have destroyed any of its elements of value.

In support of the position that said privilege and water
rights in Burrillville might properly be held to have be-
come a part of the water rights appurtenant to the mill
at Slatersville and only taxable there, the petitioner re-
lies mainly upon what it claims is the authority of *Boston
Mfg. Co.* v. *Newton,* 22 Pick. 22, and *Union Water Power
Co.* v. *Auburn,* 90 Me. 60.

In considering this phase of the case we may start with
the principle generally conceded that water power and
water rights are not independently taxable. Power is a
force and water is an element no more taxable than air.
The respondent assessors did not assume to tax the mill
privilege and water power independently but as a part of
the land. For the purpose of taxation the right to use
the water of a stream and the water power that arises
from controlling the flow of its current must be considered
as appurtenant to and an incident of some land. When
the power has been applied at some place other than that
at which it was produced there has been some slight dis-
agreement in the cases, a disagreement, however, more
apparent than real, in regard to the land to which the
power shall be considered as appurtenant, whether to the
land which from its situation and configuration was able
to produce the power or to the land where the power is
applied. It should be observed that the case at bar does
not present the condition of power produced by a fall at
(3) one place and applied at another. However, cases which
deal with that condition furnish assistance in the deter-
mination of the petitioner's claim that some of the ele-
ments of value of the Burrillville land have been taken
from it and annexed to the land at Slatersville.

In *Boston Mfg. Co.* v. *Newton,* 22 Pick. 22, relied upon by the petitioner it appears that the plaintiff was the owner of two mill dams across the Charles River where it passed between the towns of Waltham and Newton, one-half of each dam being in Newton and the other half in Waltham; and that the water power thereby created was applied exclusively to drive certain mills of the plaintiff in Waltham.  The plaintiff was taxed in Newton, upon separate items, for one-half of the value of each dam, for the value of the land in Newton covered by the river, and for one-half of the water power.  The action was brought solely for the purpose of trying the right of Newton to tax any portion of the water power all of which was applied in Waltham.  The court held that water power cannot be taxed independently of land and further stated as their opinion that the water power had been annexed to the mills at Waltham and could only be taxed there.  The plaintiff in that case did not question the taxation of the land under the river in Newton and hence the court was not called to pass upon the elements of value which pertained to that land or whether its value was increased by its capacity to create water power.  The case is of little if of any value in determining the matter before us.  In *Water Power Co.* v. *Auburn,* 90 Me. 60, it appears that the plaintiff was the owner of dams across the Androscoggin River where it flows between Auburn and Lewiston. None of the power created by these dams was used in Auburn but was employed by the plaintiff in connection with its mills at Lewiston.  The assessors of taxes of Auburn assessed a tax upon the plaintiff's dam and water rights.  The action was for an abatement of said tax. The court held that water power until applied is potential and that when applied to mills it becomes a part of the mill property and is a subject of taxation where the mills are located.  From this opinion of a majority of the court Mr. Justice Emery dissented and in an able opinion

pointed out that in these circumstances water power as a force was not taxable either in Auburn or Lewiston, but as a waterfall or mill privilege it is a parcel of land over which a stream of water flows and falls and is to be taxed in the town where it is situated. So far as the land is more valuable by reason of the stream and the falls, so far those facts are to be considered in the valuation of the land. The owner of the land owns not strictly the power but the gateway through which alone the power can be captured and led out. If the right to use the power has been acquired by the owner of a mill situated elsewhere, either personally or as an incident of the ownership of the mill, the value of such right is to be estimated in assessing the owner or the mill. '' It should not be assumed that taxing in Lewiston the right of the mill to have water power from the dam in Auburn should reduce the tax in Auburn upon the corresponding right of the dam to receive compensation therefor. The water power is not to be taxed in either town. The increased value of the real estate by reason of the incident natural monopoly or incident acquired rights, is to be taxed in the town in which the real estate is situated.'' The principles thus enunciated by Judge Emery have been followed in later Maine cases. They are in accordance with the rule in New Hampshire and in the later Massachusetts cases. In *Water Power* v. *Buxton,* 98 Me. 295, the court said: '' The property assessed here was a mill privilege. It was the land and the dam but it was the land and the dam situated as they were with the capacity to hold the water of the stream and create power. By the terms of the assessment the power was not assessed and the water was not assessed but the privilege was assessed. Its value might be greatly enhanced by the existence of the water and the means of creating the power.'' In *Fibre Co.* v. *Bradley,* 99 Me. 263, it appeared that the plaintiff was the owner of the entire dam and mill privilege of the

Penobscott river as it flows between Oldtown and Brad-
ley. The principal works of the plaintiff were situated in
Oldtown and nearly all the water power created by the
dam was used there. The plaintiff urged that such water
power should be regarded as appurtenant to the mills in
Oldtown " and that the additional value which the exist-
ence of the water power creates should not be assessed
to the Company in Bradley."

The court said, " Land upon which a mill privilege ex-
ists is taxable, and the value of the land may be greatly
enhanced by the fact that its topography is such that a
dam may be maintained across a stream upon it and water
power thereby created. The capability of the land for
such use, and the probability or certainty, as the case
may be, of its use, certainly affect its value." . . .
" It is not, where is the water power created by the ap-
pellant's dam used, but how much is its property in Brad-
ley worth. How much is it worth as it stands,— not for
farming merely, or for house lots, nor for any other one
thing, but for any and all purposes for which it may be
used. How much it is worth, taking into account that it
is part of a valuable mill privilege."

The question now under discussion has arisen in a
number of New Hampshire cases; and the Supreme Court
of that State has passed upon it in very carefully con-
sidered opinions. Those cases are all opposed to the con-
tention of the petitioner that a part of the value of the
mill privilege in Burrillville shall be held to have become
appurtenant to the mill at Slatersville and to be taxable
solely in the town of North Smithfield. *Cocheco Co.* v.
*Strafford,* 51 N. H. 455; *Manufacturing Co.* v. *Gilford,*
64 N. H. 337; *Amoskeag Co.* v. *Concord,* 66 N. H. 562.
In *Pingree* v. *County Commissioners,* 102 Mass. 76, it ap-
peared that the petitioner was the holder of land and a
dam in the town of Winsor which was used to form a
reservoir to hold back water to be used at mills in the

towns of Dalton and Pittsfield. The dam, independent of
its use for the purpose of a reservoir, was of nominal
value but for that purpose was of great value, the land
while covered by water was of only nominal value con-
sidered merely as land without regard to reservoir pur-
poses. The assessors of Winsor taxed the dam and land
for $15,000. The plaintiff asked for an abatement of the
tax contending that the said valuation and tax must have
been made and assessed upon the water power none of
which was applied in Winsor. The court pointed out that
*Boston Mfg. Co. v. Newton,* 22 Pick. 22, apparently relied
upon by the plaintiff as it is by the petitioner in the case
at bar, while it decided that the water power should be
regarded as incident to the mills to which it was applied,
did not decide that the land and the structures by which
the water power was created were not taxable at their
value for such purposes. The court in the *Pingree* case
sustained the valuation and tax; held that the land and
the dam are taxable in Winsor; and " that the valuation
should be made, not subject to the use to which they are,
for the time, appropriated; nor independently of that
use, in any sense which excludes it from consideration as
a means by which their value is made available." In
*Blackstone Mfg. Co.* v. *Blackstone,* 200 Mass. 82, it ap-
peared that a Rhode Island corporation erected in Massa-
chusetts a dam across the Blackstone River and con-
structed in connection therewith upon land owned by it,
canals, ponds and trenches in the town of Blackstone, but,
without making any application of the water power in
Massachusetts, carried the water in a trench with a slight
fall into Rhode Island, where it was used in a power house
to generate electricity with which to run a mill in that
State. The assessors of Blackstone taxed such of the
property of the corporation as was in that town, includ-
ing the dam, the pond, the canals, and the trench, with

reference to its value as a means of furnishing power at the corporation's power house in Rhode Island, and the corporation petitioned to have the tax abated. As part of a very fully considered opinion the court said: " What is the value of the petitioner's property, having reference to any and all of the uses to which it is adapted." . . . " If conditions in Rhode Island were disregarded, the value of the property in Massachusetts, including with the land and water the fall which the land furnishes, and the dam, pond, canals and other appurtenances, would be estimated in reference to the most profitable uses to which it could be put, and especially its use to furnish power to a mill in Massachusetts, situated near the line of the State of Rhode Island. Inasmuch as it has been joined to the property in Rhode Island and used with the slight additional fall there to produce a single unit of water power, and inasmuch as it is found that this is the most valuable use to which it can be put, there is no reason why its value should not be considered in reference to the use to which it is adapted, and which is now made of it in connection with the property in the other State." In the State of Connecticut it is provided by statute that when water power is used in a different town from that in which it is created such power shall be listed for taxation only in the town where it is used. In *Quinebaug Reservoir Co.* v. *Union,* 73 Conn. 294, it appeared that the plaintiff was the owner of certain water rights in the town of Union which the court held to be an incorporeal hereditament and real estate. The plaintiff employed these water rights for the purpose of accumulating a water supply for use by mills lower down on the stream in the State of Massachusetts. The court held that the said statute was to be construed as applicable only to towns in Connecticut. As the power was used in Massachusetts the

ordinary rule governed and the water privilege was properly taxed in Union. " When water is artificially stored upon land so as to create mechanical power by its fall, the necessary result is to bring into existence a new element of value. If the land thus used for storage purposes would be more valuable for other purposes, the value gained is less than the value lost. If, on the other hand, the power created has a value exceeding that of the land occupied, the taxable resources of the State in which that land is situated are increased." In our opinion the better reason well supported by the weight of authority is: that land should be taxed with all its elements of value in the town where the land is situated. If land upon a stream has such topography either natural or artificial as to give to the land the capacity to control the current of the stream and to pour out the water of the stream from an elevation, thus creating water power, these circumstances enhance the value of that land and furnish a basis for taxation. This is true whether that capacity is employed to create water power to be used on that land or upon other land in another town or another State, and also even in case such capacity of the land is not employed at all. If water power thus created is conducted to mills situated elsewhere and there applied, that circumstance may reasonably be regarded as increasing the value of the mills receiving such power and may be considered in the taxation of such mills; but no element of value is thereby taken from the land where the power is created and transferred and made appurtenant to the mills where the power is used.

In our opinion the petitioner is not entitled to relief upon either of the grounds that it has urged before us. We give decision in favor of the respondents for their costs.

The papers are ordered to be sent back to the Superior

Court with this decision certified thereon, and with direction to enter final judgment upon said decision.

*Barney, Lee & McCanna, Walter H. Barney,* for petitioner.

*Irving Champlin, James Harris, John J. Lace,* for respondent.