THE MAD RIVER COMPANY *v.* TOWN OF WOLCOTT

SCOVILL MANUFACTURING COMPANY *v.* TOWN OF WOLCOTT

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and ALCORN, Js.

Argued April 5—decided May 15, 1951

*Mark L. Sperry, 2d,* with whom was *Heminway Merriman,* for the plaintiff in each case.

*John J. Mezzanotte,* with whom were *David Leib* and, on the brief, *William L. Hadden,* for the defendant.

BALDWIN, J. These two cases are appeals from the board of tax review of the defendant town of Wolcott to the Court of Common Pleas, which reserved them for advice upon the questions appearing in the footnote.[1] Briefly stated, the questions ask whether certain dams owned by the plaintiffs and located in the

---

[1] The questions upon which the advice of the Supreme Court of Errors is desired are as follows: 1. "Should the Chestnut Hill, Woodtick or Woodtick Secondary Dams, all of which are owned by Scovill

defendant town are taxable there or in the city of Waterbury. The cases were argued, and will be considered, together.

The stipulated facts may be summarized as follows: The plaintiffs gave to the assessors of the defendant town lists of the taxable property owned by them on October 1, 1948, but did not include the dams, claiming that they were not taxable in Wolcott. The assessors, over objection, added them to the list of property taxable to the plaintiffs. The plaintiff Scovill Manufacturing Company has its principal manufacturing plant in Waterbury. The plaintiff Mad River Company, also of Waterbury, is a corporation organized for the purpose of improving and maintaining the water power on the Mad River. Any riparian owner on that stream may become a stockholder or may use the water without being a stockholder in the company. The stock is severally owned by the plaintiff Scovill Manufacturing Company, the Mattatuck Manufacturing Company, the Waterbury Companies, Inc., and the American Brass Company. They operate manufactur-

Manufacturing Company, be included in the assessment list of said Company's taxable property in the Town of Wolcott and thereby be made subject to taxation by said Town under the provisions of Sections 1156 or 1159 of the General Statutes of Connecticut, Revision of 1930, under the provisions of Section 366c of the Cumulative Supplement to the General Statutes of Connecticut, Revision of 1930, January Sessions, 1931, 1933, 1935, or under the provisions of any other Connecticut statute pertaining to the assessment and taxation of property?" 2. "Should the Cedar Swamp Dam, also known as Cedar Lake Dam, or the Lilley Brook Dam, also known as Hitchcock Lake Dam, both of which are owned by The Mad River Company, be included in the assessment list of said Company's taxable property in the Town of Wolcott and thereby be made subject to taxation by said Town under the provisions of Sections 1156 or 1159 of the General Statutes of Connecticut, Revision of 1930, under the provisions of Section 366c of the Cumulative Supplement to the General Statutes of Connecticut, Revision of 1930, January Sessions, 1931, 1933, 1935, or under the provisions of any other Connecticut statute pertaining to the assessment and taxation of property?"

ing plants in Waterbury. Each of the plaintiffs owns two parcels of land in the defendant town through which the Mad River flows. Each maintains, on its parcels, its dams and the ponds of water which they impound. The water so stored is released from time to time into the Mad River and flows down that stream into Waterbury, where it is used by the manufacturing companies named above to generate electric power, to make steam, for fire protection and sanitary purposes and for general manufacturing uses only. None of the power generated and none of the water impounded are sold. The water is not suitable for drinking or bathing. That which is not consumed is discharged into the Naugatuck River. The plaintiff Scovill Manufacturing Company controls the maintenance and operation of the dams and initially bears the expense involved. The plaintiff Mad River Company pays its proportionate part thereof and assesses that amount against its stockholders.

Section 367c of the 1935 Cumulative Supplement and § 1159 of the Revision of 1930 (Rev. 1949, §§ 1756, 1757), which are quoted in full in the footnote,[1] provide that water power created by works wholly located

---

[1] Sec. 367c. WATER POWER, HOW TAXED. When water power, created or reserved in any manner by works wholly located in the same town in which it is appropriated and used, is used by its owner, the whole shall be assessed and set in the list as incidental to the machinery which is operated by it, and not separately as distinct property; and, when such power or any part thereof is leased from its owner, it shall, to the extent to which it is so leased, be assessed and set in his list at a valuation not exceeding one hundred-sevenths of the net revenue derived therefrom.

Sec. 1159. TAXATION OF WATER POWER AND WORKS WHEN POWER IS USED IN ANOTHER TOWN. When such power is appropriated and used in any other town than that in which the dam, canal, reservoir or pond creating it is located, the valuation of the land occupied by such dam, canal, reservoir or pond, and the increased flowage occasioned thereby, shall be made and set in the list in the town in which such dam, canal, or reservoir or pond is located, to the owner of such

in the same town in which the power is appropriated and used shall, if used by its owner, be assessed and set in the tax list to the owner as incidental to the machinery operated by it and not separately as distinct property; and that when water power is appropriated and used in any other town than that in which the dam, reservoir or pond is located, the land occupied by these works and by the increased flowage shall be assessed and taxed as improved farming land in that town, but the power created thereby shall be assessed and set in the list in the town in which it is used and appropriated as incidental to the machinery operated by it, and not separately as distinct property.

These statutes had their genesis in 1869. Public Acts, 1869, c. 131. Their apparent purpose was to furnish a uniform and understandable method of taxing water power and the works that create it. The first case to come to this court calling for a construction of the statutes was *Quinebaug Reservoir Co.* v. *Union,* 73 Conn. 294, 47 A. 328. We there held (p. 298) that they did not apply to a situation where power was created by a reservoir and dam within the state but was used outside. The rule established by this decision was later incorporated into Public Acts, 1915, c. 194 (Rev. 1930, § 1160; Rev. 1949, § 1758). We held later, in *East Granby* v. *Hartford Electric Light Co.,* 76 Conn. 169, 173, 56 A. 514, that where a dam and reservoir lay in two towns, the water power was taxable in the town where the power plant was located. See also *Hazard*

power at the average assessed valuation of improved farming land in such town, and such power shall be assessed and set in the list in the town in which it is so used and appropriated as incidental to the machinery which is operated by it, and not separately as distinct property; and the assessors shall, in estimating either the incidental value of such power to the machinery operated by it, or its net rental value, deduct from the amount which would otherwise be assessed against such power the value of the land so occupied.

*Powder Co.* v. *Enfield*, 80 Conn. 486, 488, 69 A. 16. Those who drafted and enacted the original act could hardly have foreseen the modern hydroelectric generating plant with its great dams and powerhouses, the transmission lines of which carry electric current long distances in a wide network extending over the state. When the assessors of the town of Oxford, in 1924, set in the tax list of their town part of the dam extending across the Housatonic River from Oxford to a power plant in Monroe, together with the towers, cables and other tangible property, all owned and used by the Connecticut Light and Power Company for the transmission of electric power and located in Oxford, the company appealed. *Connecticut Light & Power Co.* v. *Oxford*, 101 Conn. 383, 126 A. 1. We there said (p. 393), with reference to General Statutes, Rev. 1918, §§ 1218, 1219, the statutes presently under consideration: "These two sections, taken together, show clearly what kinds of property embraced in the provisions of § 1218 were, by the operation of § 1219, to be treated in a different way as regards assessment by reason of its location in another town, that is, land occupied by the 'dam, canal, reservoir or pond, and the increased flowage occasioned thereby.' The object was to let the town in which the works were not situated, tax land and land only; the land on which the dam rests is there taxable, but not the dam itself. That remains as in § 1218, incidental to the machinery; we might, perhaps, in a general way, say it is a part of the machinery." The towers, cables, and other property were held to be personal property likewise incidental to the plant and taxable at the situs of the plant. See *Preston* v. *Norwich Compressed Air Co.*, 83 Conn. 561, 566, 78 A. 312.

Following the decision in *Connecticut Light & Power Co.* v. *Oxford*, supra, the General Assembly in 1931

enacted a statute, § 366c of the 1935 Cumulative Supplement (Rev. 1949, § 1759), which reads as follows: "Real and tangible personal property owned by any company, as 'company' is defined in section 1087, employed in the manufacture, transmission or distribution of gas or electricity or both to be used for light, heat or motive power or in the operation of a system of water works for selling or distributing water or both for domestic or power purposes or for two or more of such purposes, shall be set in the list of each town where such property is situated on its assessment day and shall be liable to taxation at its fair market value. The provisions of this section shall not affect the provisions of § 1157. Property subject to taxation under the provisions of this section shall not be subject to taxation under the provisions of sections 367c, 1159 and 1160. Railroad and street railway companies subject to taxation under the provisions of chapter 70, and express, telegraph, telephone, cable and car companies subject to taxation under the provisions of chapter 72, shall not be subject to the provisions of this section."

The plaintiffs contend that this statute applies only to public utility companies and therefore does not change the prior existing law with respect to the properties of these plaintiffs. The defendant argues that it amends § 1159 of the Revision of 1930 (Rev. 1949, § 1757) to the extent that it makes the dams taxable in the defendant town. The settlement of this issue requires a construction of § 366c to determine the legislative intent expressed by it. That intent is to be sought first in the language used in the text of the act, and if that is unambiguous there is no occasion to resort to other aids of interpretation. *Swits* v. *Swits,* 81 Conn. 598, 599, 71 A. 782; *Parsons* v. *Wethersfield,* 135 Conn. 24, 28, 60 A. 2d 771; *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A. 2d 128. Legislative

intent in a case of this kind is to be found not in what the legislature meant to say but in the meaning of what it did say. *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414, 422, 52 A. 2d 636; *State* v. *Bello,* 133 Conn. 600, 604, 53 A. 2d 381; *Connelly* v. *Bridgeport,* 104 Conn. 238, 249, 132 A. 690; *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 A. 540. The statute applies to real and tangible personal property owned by "any company as 'company' is defined" in § 1087 of the Revision of 1930 (Rev. 1949, § 1678). The definition referred to includes "persons, partnerships, associations, companies and corporations." It is found in the opening section of the chapters of the General Statutes concerned with taxation. The text of the act under consideration does not say "any public utility company." It is broad and all-inclusive. Its expressed intent to be so is evidenced by the fact that it contains language generally inclusive in its import and then proceeds specifically to except railroad, street railway, express, telegraph, telephone, cable and car companies. The plaintiff companies fall clearly within the plain wording of the statute in that they own real and tangible personal property employed "in the manufacture . . . of . . . electricity . . . or in the operation of a system of water works for . . . distributing water . . . for . . . power purposes."

The plaintiffs concede that under a literal reading of the statute the dam structures might be assessable in the defendant town, but they point to the title of the act, which reads, "Property of public utility company to be taxed where located," as indicative of the legislative intent. It is true that the terms of the title may be considered in determining the legislative intent. *Baker* v. *Baningoso,* 134 Conn. 382, 387, 58 A. 2d 5; *State* v. *Muolo,* 119 Conn. 323, 330, 176 A. 401. But "titles are of little importance as compared with text

as indicative of legislative intent." *Root* v. *New Britain Gas Light Co.*, 91 Conn. 134, 140, 99 A. 559. The title cannot enlarge or restrict the meaning of a statute where the language of the text is plain and the intent is clearly expressed. *State ex rel. Hartnett* v. *Zeller*, 135 Conn. 438, 442, 65 A. 2d 475; *New York, N. H. & H. R. Co.* v. *Orange*, 91 Conn. 472, 479, 100 A. 25; *Strathearn Steamship Co.* v. *Dillon*, 252 U. S. 348, 354, 40 S. Ct. 350, 64 L. Ed. 607; *Patterson* v. *Bark Eudora*, 190 U. S. 169, 172, 23 S. Ct. 821, 47 L. Ed. 1002; *Burnham* v. *Mayor & Aldermen of Beverly*, 309 Mass. 388, 394, 35 N. E. 2d 242; *American Surety Co.'s Case*, 319 Pa. 549, 553, 181 A. 364; *Huff* v. *Udey*, 173 Ark. 464, 467, 292 S. W. 693; 50 Am. Jur. 300, § 312. We cannot speculate upon any supposed intention not appropriately expressed in the language of the act itself or restrict the ordinary import of the words therein used. *McManus* v. *Jarvis*, 128 Conn. 707, 711, 22 A. 2d 857; *State ex rel. Brown* v. *Lawlor*, 119 Conn. 155, 163, 174 A. 415; *Lee Bros. Furniture Co.* v. *Cram*, 63 Conn. 433, 438, 28 A. 540. The language of the statute before us is clear and unambiguous. Section 366c (Rev. 1949, § 1759) covers a special case carved out of the general terms of § 1159 of the Revision of 1930 (Rev. 1949, § 1757) and provides that where it is applicable the property shall not be taxed under § 1159. It is applicable to the plaintiff companies and makes their dams taxable in the defendant town.

We answer the questions propounded: The dams described in the complaints should be included in the assessment lists of the plaintiffs' taxable property in the town of Wolcott and are subject to taxation under the provisions of General Statutes, Cum. Sup. 1935, § 366c (Rev. 1949, § 1759).

No costs will be taxed in this court.

In this opinion the other judges concurred.