THE PARK REGIONAL CORPORATION ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF WINDSOR

WYNNE, C. J., BALDWIN, DALY, KING and MURPHY, Js.

Argued November 6—decided December 10, 1957

*Ralph C. Dixon,* for the appellants (plaintiffs).

*Frank J. Monchun,* with whom was *Harry Cooper,* for the appellee (defendant).

KING, J. This is an appeal from the action of the defendant commission in denying the plaintiffs' application for a zone determination to permit the construction of a regional shopping center on their land.

Prior to April 6, 1955, the plaintiffs' land apparently had been zoned for residence purposes. The plaintiffs make no claim that its zone status, prior to that date, permitted the erection of the proposed shopping center. On that day the defendant, after a duly advertised public hearing, adopted a so-called comprehensive plan of development embodied in a resolution and a set of maps, one of which included the plaintiffs' land. That land, on the map, is designated "RS," which the accompanying legend describes as "area dedicated for a regional shopping center under special conditions." In paragraph seven of the resolution, it was provided "that a portion of town be reserved for a Regional Shopping Center, the effective date of any rezoning approved after duly publicized public hearings to be simultaneous with the start of construction." In paragraph nine, the defendant approved the "generalized Plan of Development" set forth in the resolution. Thereafter, the defendant and the town council held a series of public hearings preparatory to the adoption of a new set of zoning regulations and maps, including a map showing the plaintiffs' land. After a public hearing on July 29, 1955, the defendant approved proposed new zoning regulations for the town and a new zoning map, the whole to be presented to the town council for adoption as an ordinance. On August 22, 1955, the town council

approved and legally adopted the new zoning regulations and map, to become effective on September 9, 1955.

On one sheet of the zoning map, the plaintiffs' land appears uncolored and unlabeled, and the spaces so treated on the map are explained in the legend on another sheet as "Public & semi-public land not subject to zoning. Temporar[il]y unzoned." On "Plan of Development" or "Zoning Maps" issued as of December 20, 1955, and, in revised form, as of June 12, 1956, the plaintiffs' land is marked "NZ," which, according to the applicable legend is land "not subject to zoning and special zone reserves according to general plan." On one sheet of the general zoning map there is a schedule of certain zoning regulations applicable in seven residential zones, two business zones and two industrial zones. By the zoning regulations and map, areas were zoned for business use and so marked, but the plaintiffs' land was not placed in any business zone. It was marked as aforesaid. The zoning regulations contained no provisions governing the use of land not zoned or temporarily unzoned. They affirmatively listed the uses permitted in the respective zones but did not list any uses for an "NZ" area.

On March 7, 1956, the defendant, at an executive meeting, set forth the conditions for the establishment of a business zone at the Park Regional Shopping Center, which was the plaintiffs' land. Included in these conditions were the following: "5. Planning Commission to advertise a public hearing for the purpose of establishing a business zone. 6. Tentative zone change (if granted) subject to the start of building construction within specified time and in accordance with plans approved by the Commission." Subsequently, at an executive meeting of the defendant

on March 14, 1956, it was voted to correct the minutes of the meeting on March 7 to read "zone determination" in place of "zone change."

By application dated March 29, 1956, the plaintiffs applied for "a determination of zone, for an area formerly zoned Residential, to Business II (Regional Shopping Center)" and stated that they were "now ready to meet all the conditions set forth for the establishment of a business zone at the Park Regional Shopping Center." At the public hearing on the application on April 30, 1956, they requested that their land, "presently classed as NZ, . . . be changed to B-2." They referred to the action sought as "a change of this zone to a B-2 zone." Both the plaintiffs and the defendant followed the usual procedure for a change of zone, including the filing of petitions and presentation of speakers for and against the proposed change and the introduction of documentary evidence purporting to show its desirability. The petitions filed in support of the plaintiffs' application recited that the signers were in favor of a B-2 zoning designation for the plaintiffs' land. At an executive session on May 9, 1956, the defendant approved the plaintiffs' application by a three to two vote of its membership, but denied the application on the ground that it could be granted only by a unanimous vote because of the provisions of the special act, enacted in 1931, authorizing zoning in the town of Windsor. 21 Spec. Laws 277, § 5.

The basic claims of the plaintiffs are twofold. In the first place, they claim that they needed no change of zone nor determination of zone because the classification of their property made by the defendant in July of 1955 and approved by the town council effective September 9, 1955, gave them the right to use their land for any purpose whatsoever. This claim, if

sustained, would of course be decisive of this appeal. Secondly, they claim that if their first contention is not sustained, the defendant was in error in construing the special act as requiring, under the facts of this case, a unanimous vote of the defendant's entire membership.

The establishment of zones in a community by a duly authorized body is basically a legislative process, although local in its scope. In the interpretation of the language of a legislative enactment, the question is as to the expressed intention, that is, the intention of the legislative body "as found from the words employed to make it manifest." *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 A. 540. The actual intent, as a state of mind, of the members of a legislative body is immaterial, even if it were ascertainable. Ibid.; *State ex rel. Pettigrew* v. *Thompson,* 135 Conn. 228, 233, 63 A.2d 154; *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 688, 81 A.2d 119.

The zoning regulations and accompanying map apparently covered all of the property in the town. At least they covered that of the plaintiffs and all other property in the same general area. Since on the zoning map the plaintiffs' property was indicated to be temporarily unzoned, the effect was that the zoning authority had established, for the time being, no regulations for the use of this property. The finding that the "entire scheme of the Windsor zoning regulations is permissive in contrast to the prohibiting type of zoning ordinance which allows all uses, except those expressly prohibited," is unattacked, as is the finding that the zoning regulations affirmatively list uses permissible in various zones. It follows that no uses were permissible upon the plaintiffs' land and none would be until it had been so zoned as to authorize them. Whether the plain-

tiffs' claim that their property was open to any use they might see fit to make of it would have been well founded had the property been wholly omitted from the zoning regulations and map covering the entire town, we have no occasion to consider, since that was not the case. The plaintiffs' property was included, and unmistakably included, in the zoning regulations, but there was a failure to classify it as to zone or permissible uses. Since in Windsor a property may be used only in conformity with the zoning regulations, and since, admittedly, valid regulations were generally in effect as of September 9, 1955, covering the plaintiffs' land, a failure to include in those regulations permissible uses for this land rendered it unusable for any purpose until some use was authorized by appropriate action. The first claim of the plaintiffs, therefore, is decided adversely to them.

Actually, the plaintiffs, in their application and in their statements at the hearing on it, seem to have construed the NZ classification of their property correctly, since they sought, and on May 9, 1956, obtained, approval of a business 2 classification for it. Whether the phrase "change of zone" or "determination of zone" was the more appropriate to describe the action sought is immaterial here. The approval of the application, but for the provisions of the special act (21 Spec. Laws 277, § 5), changed the plaintiffs' property from one having no permissive uses into one having the permissive uses accorded property within a business 2 zone. This was a change of zone within the meaning of the special act.

It now becomes necessary to consider the plaintiffs' second basic claim, that it was not necessary, on the facts of this case, to obtain a unanimous vote

of the members of the defendant under the applicable provisions of the special act.[1] Here again the only question is one of law as to the meaning of those provisions. *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 A. 540; *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 688, 81 A.2d 119. The defendant's interpretation of them is of no importance except as it conforms to a legal interpretation. There is no room for, nor any question as to, the exercise of any discretion on the part of the defendant in its interpretation of this statute.

While some question was made at the trial as to which was the rear line of the plaintiffs' property, we understand the plaintiffs' brief to concede that the rear line was the south line. The real dispute as to the interpretation of the relevant provisions of the special act, obviously taken from § 425 of the Revision of 1930 (now Public Acts 1957, No. 662), centers on whether the phrase "immediately adjacent in the rear" modifies "area" or "lots." Ordinarily, an owner of a lot would be the owner of the area of that lot. The only rational explanation of the language used is that the General Assembly was not thinking of owners of lots but of owners of areas. What is required is a protest filed by the owners (whether one owner or many owners) of at least 20 per cent of certain areas. It is not the owners of 20 per cent of the lots with whom we are concerned but the owners of 20 per cent of certain areas of lots. An entire lot, as in the case of the Valente lot here,

[1] "[Spec. Acts 1931, No. 305] Sec. 5. . . . If a protest shall be filed with the zoning commission against any . . . proposed change [of zone] signed by the owners of twenty per centum or more of the area of the lots . . . immediately adjacent in the rear [of the lots included in the proposed change] . . . extending one hundred feet therefrom, . . . such change shall not become effective except by unanimous vote of the zoning commission."

might not be either "immediately adjacent" to or "in the rear" of the lots included in the change of zone. But if part of it was, then that part would constitute an area "immediately adjacent in the rear" of the lots included in the zone change. This makes it clear that we are to consider that area of the Valente lot which is "immediately adjacent in the rear" of the plaintiffs' property, that is, of the south line of the plaintiffs' property. It remains to determine what that area is.

One of the maps shows that the Valente lot fronts on the westerly side of Grove Street and that the westerly line of the lot is substantially parallel with the westerly line of Grove Street. The same is true of the westerly lines of the other lots in the nearby area west of Grove Street, as shown on one of the maps in evidence. Therefore, in determining the area of the Valente lot which is "immediately adjacent" to the south line of the plaintiffs' property as distinguished from the area which is "immediately adjacent" to property of the town of Windsor which abuts the Valente lot on the north for a distance of some forty-five feet measured westerly from Grove Street, the division line should run parallel to the westerly line of Grove Street. The north end of this line should be at the southwest corner of the lot belonging to the town of Windsor. The portion of the Valente lot which is west of a line so drawn and not more than one hundred feet southerly of the south line of the plaintiffs' property should be taken into account as the area (of that lot) "immediately adjacent in the rear" of the plaintiffs' property and "extending one hundred feet therefrom." In excluding the entire Valente lot from consideration because part of it abutted land of the town of Windsor instead of the rear of the plaintiffs'

property, the court was in error. As we understand it, however, the plaintiffs conceded during the argument in this court that unless substantially all of the Valente lot is included in the computation area, more than the required 20 per cent objected to the zone change. As pointed out, a substantial part, even though not all, of the Valente lot is not so included. It follows that a unanimous vote of the defendant's membership was required under the terms of the special act.

What has been said sufficiently disposes of the claims for correction of the finding so far as they are material.

There is no error.

In this opinion the other judges concurred.