ROCKY HILL INCORPORATED DISTRICT *vs.* HARTFORD RAYON CORPORATION ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued December 3d, 1936—decided January 8th, 1937.

*William H. Blodgett,* with whom was *Howard E. Hausman,* for the appellants (defendants).

*Ernest L. Averill,* with whom was *Albert S. Bill,* for the appellee (plaintiff).

HINMAN, J. The complaint sought recovery of taxes assessed and levied by the plaintiff upon property of the defendant in 1932, 1933, 1934 and 1935. The defendant by special defenses raised the issues, first, whether all or any part of the property of the defendant is within the limits of the plaintiff district; second, if it is, whether its inclusion therein under the circumstances is unconstitutional; and third, whether the taxes sought to be collected are invalid because of certain omissions in the proceedings pertaining to their assessment. The points involved in this appeal are substantially those above mentioned as presented by the special defenses and we consider them in their order, stating in connection with each such of the material facts as are essential to the discussion.

The real estate upon which the taxes here concerned were assessed is owned by the defendant the Belamose Corporation, the name of which has been changed since the action was brought to the Hartford Rayon Corporation, and all of the property the taxation of which

is involved was owned by it on the respective taxing dates. In October, 1929, at a town meeting of the town of Rocky Hill, the selectmen were delegated to appoint a committee to investigate the matter of obtaining water for the town, which committee in its findings and report to the adjourned town meeting in March, 1930, considered and proposed a district which included the property of the defendant. On January 3d, 1931, a special meeting was held pursuant to the provisions of §§ 544 and 545 of the General Statutes, to act upon a petition of "voters and taxpayers in the town of Rocky Hill, residing within the district bounded on the north by the town line; on the west by Bailey Road and Bailey Road extension, crossing West Street or Retreat Road to a point opposite the South School; on the south by an imaginary line running from said point to the Connecticut River; on the east by the Connecticut River to the Ferry Landing and from that point by the Old Meadow Road to the northern boundary line," requesting the selectmen to call such meeting for "the formation of a Water District within the above described boundaries" and "the obtaining of such authority as may be necessary within the District to construct and maintain sidewalks, crosswalks, drains and sewers, to establish water works to supply water for domestic, commercial and fire protection purposes within said District, to name the district, to choose necessary officers, to provide for the expense incidental to the formation of the District, therefore to lay and collect taxes to accomplish the purposes of said District and to transact any other business proper to come before said meeting." At this meeting resolutions were adopted "that a District be formed for any and all purposes set forth in Section 545 of the General Statutes;" and "that said District may construct and maintain sidewalks, cross-

walks, drains, and sewers, and to establish water works to supply water for domestic, commercial, and fire protection purposes within said District." Resolutions were also adopted naming the district and specifying the officers thereof, officers were elected to hold office until the next annual meeting, and a resolution was passed "that at the expense of the District the President forthwith cause a survey to be made of the territorial limits of said District," also one appointing a committee to prepare and obtain legislation giving the District "the necessary power to construct or purchase water works and to purchase and distribute water."

Pursuant to the resolution authorizing him to do so, the district president, Charles E. Holmes, employed Chester W. Ladd, a land surveyor, to make a survey of the territorial limits of the district, the results of which were set forth in a technical description, which was recorded early in March, 1931, in the town records of Rocky Hill and were delineated on a map, referred to in the description, which was filed in April, in the office of the town clerk. In making the survey Ladd was instructed by Holmes as to where the lines should be drawn, the southerly boundary line being located after a conference between Holmes, Ladd and Edmond W. Courtney, first selectman of the town of Rocky Hill. The location of the east, north, and west boundaries is not challenged by the defendant, the disputed portion being the south boundary, described in the petition and notice leading up to the formation of the district as "on the south by an imaginary line running from [a point opposite the South School] to the Connecticut River." The line as surveyed and shown on the map runs, by varying courses, in a generally southeasterly direction from the designated starting point to the river, and passes a short distance southerly of,

and includes within the district, the group of factory buildings of the defendant. The defendant claims that this line as so laid out is inadmissible under any reasonable interpretation of the description in the petition, and that, instead, the boundary should be a straight line, running from the beginning point due east to the river or to the nearest point on the river, or on a line parallel with the northern boundary of the district. A boundary following any one of these suggested lines would terminate at the river about one-third of a mile northerly from the present termination and would include in the district none of the defendant's property.

Whatever might be our conclusion as to these claims, the defendant's laches and tardiness in advancing them and the consequences thereof are such as to estop it from now asserting them. The finding shows that before the line was surveyed Holmes informed officials of the defendant that it was being laid out and that the surveyor would enter upon its property for that purpose. At the time of the survey four monuments were placed along the line on the defendant's land. Officials of the company knew of the pendency in the General Assembly and the contents of the bill authorizing the district to provide for a water supply, also of a bill authorizing the district to issue water bonds, which was passed (Special Laws, 1931, p. 348) and, pursuant to the authority granted by it, bonds in the amount of $100,000 were issued. The defendant had at least constructive notice of all town and district meetings, through notices placed, at its request, on a special bulletin board in its factory, and in and after April, 1931, of the boundaries of the district, by the map on file. After the receipt of the first tax bill, in May, 1932, the defendant protested and refused to pay the tax, but made no claim that its property was

not within the district, and it took no action prior to the commencement of the present suit to have the taxes declared illegal on that ground or to have the validity of the south boundary line adjudicated. Instead, the officers of the company recognized the fact that its property was within the district and were seeking a means of withdrawing therefrom. In the meantime taxes for four years had been assessed, those against the defendant being from 22 to 26 per cent. of the total tax levy of the district, and bonds had been issued, the interest and payments on account of principal of which, as well as all other expenses of the district, were made payable from taxes. Manifestly serious public inconvenience, confusion and injury would result from an adjudication, now, excluding the defendant's property from the district, which could have been avoided had the defendant asserted its claim thereto with reasonable promptness.

"Every applicant to a court whose claim, if granted, must invite consequences of such serious import should be held to have waived his right to make such a contention where he has had a fair opportunity to make it and failed to avail himself of it and thereafter rights, public or private, have intervened which will be prejudiced if the applicant shall succeed." *Coombs* v. *Larson,* 112 Conn. 236, 246, 152 Atl. 297. This principle is as applicable to cases of inclusion of property within the limits of a municipal corporation in its formation as it has been held to be in cases of subsequent annexation. 1 McQuillin, Municipal Corporation (2d Ed.) § 306. "If a taxpayer were permitted to long acquiesce in [an] order of annexation and then secure its overthrow, great confusion would ensue and much injustice be often done. High considerations of public policy require that a taxpayer who is notified that a public corporation claims to have extended its limits so as to

take in his property should act with promptness and proceed with diligence, if he would resist the attempted annexation." *Strosser* v. *Fort Wayne,* 100 Ind. 443, 449; *Kuhn* v. *Port Townsend,* 12 Wash. 605, 614, 41 Pac. 923, 29 L. R. A. 445; *Black* v. *Brinkley,* 54 Ark. 372, 15 S. W. 1030; *Rural Special School Districts* v. *Ola Special School District,* 182 Ark. 197, 31 S. W. (2d) 129.

The second main point of appeal is that the inclusion of the defendant's property within the district was unconstitutional by reason of violation of the due process clause. When a district is so formed territorially as to include property which is not presently "and cannot be benefited directly or indirectly" and which is embraced "only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation violative of the due process clause." 2 Cooley, Constitutional Limitations (8th Ed.) pp. 1081, 1082, based upon *Myles Salt Co., Ltd.* v. *Iberia Drainage District,* 239 U. S. 478, 36 Sup. Ct. 204, in which that was the situation. *Morford* v. *Unger,* 8 Iowa, 82, 92. But, per contra, a like infirmity does not attach where, although there may not be a present actual benefit at the time of the formation of the district, it is reasonably to be anticipated that benefit may accrue in the future. *Spencer* v. *Merchant,* 125 U. S. 345, 353, 8 Sup. Ct. 921.

The trial court's finding that "the land of the defendant included within the district is flat, level, cleared land suitable for building purposes while the land of the defendant south of the district line is brush and woodland" is well justified by evidence, including aeroplane maps of the territory, as a general statement of the physical situation. Another consideration which may well have been regarded is afforded by the special act of the General Assembly, authorized by the first

meeting of the district to be sought, and passed March 19th, 1931. Special Laws, 1931, p. 41. It is apparent that when the district was created, while a principal object thereof was to provide for a supply of water for the inhabitants of the territory, the manner in which that was to be obtained was undetermined and uncertain. The special act (§ 1) authorizes the district "to purchase, construct, establish or otherwise provide and maintain a plant or plants for the purpose of supplying said district with a suitable supply of pure water . . . and said district shall have power to construct, repair and maintain a reservoir or reservoirs, plant and apparatus within the town of Rocky Hill for such purposes, and may take, lease and use the water of any spring, stream, watershed or drainage area therein." A subsequent section (5) authorized the district to purchase water from or sell water to the Metropolitan District in Hartford County or any municipality or water company.

The chief argument of the defendant in support of its claim of lack of benefit to its plant and property within the district is that prior to the formation of the district it had secured for itself a private water supply which was and is abundant for its manufacturing purposes, for fire protection, and for supplying its nine dwelling-houses, so that it had no necessity or occasion for taking water from the district's distribution system. But, as appears from the legislation obtained, the contemplated means of providing water for the district included a taking of any available sources of supply within the town of Rocky Hill, so that the stream and watershed from which the defendant derives its supply might have been so taken, if the alternative of purchase of water from the Metropolitan District had not, finally, been adopted, in which event the defendant would have been dependent

upon the district supply. Indeed, so far as the record shows, this may yet eventuate through termination of the present contract and the exercise of the powers of the district to acquire a supply of its own. It is also found that "the result of the establishment of the district and the benefits obtained or to be obtained therefrom is of value to the defendant corporation in procuring for its large force of workmen better and more sanitary living conditions." Further, the district has powers, though as yet unexercised, "to construct and maintain sidewalks, crosswalks, drains and sewers," which, so far as appears, are appropriate and potentially beneficial to the property of the defendant as well as that of the other inhabitants. The foregoing considerations are sufficient to support the trial court's conclusion that the inclusion of the defendant's property within the district was not unconstitutional by reason of violation of the due process clause.

The defendant claims further, however, that even if its attacks upon the validity of the southerly boundary line of the district be not sustained and, consequently, property of the defendant is to be regarded as within its limits, the taxes, assessed upon it, which are sought to be recovered are invalid and unenforceable because of certain informalities and omissions in the proceedings by which they were assessed, especially in that: first, no list or abstract showing the net taxable grand list of the district for the assessment years 1931 and 1932 was perfected and lodged with the town clerk, and abstracts for the years 1933 and 1934, so lodged, were, it is claimed, defective; second, that no notices of assessment or valuation or of a meeting of the assessors and selectmen for the purpose of reviewing the same, were given to the defendant, as required by § 1256 of the General Statutes; and, third, that the assessors and selectmen failed to hold any such meet-

ing as is provided for by § 1258 of the General Statutes. These sections pertain to school districts but, by § 547 of the General Statutes, are made applicable to districts such as the plaintiff. Section 1210 of the General Statutes provides that taxes of any subdivision of a town "shall be laid either on the assessment list of the town last before completed or on the assessment list next thereafter to be completed. . . ." Section 1256 provides as follows: "When real estate in any district is so entered in the list of the town in common with other real estate situated out of such district that there is no distinct and separate value put by the assessors upon the part lying in such district, one or more of the assessors of the town in which such property is situated shall, on application of such district, value the part lying in such district and return a list of the same to the clerk of such district; notice of such valuation, and of the meeting of the assessors and selectmen mentioned in section 1258, shall be given by the district committee in the same way as a notice for district meetings." Section 1258 provides that: "At the end of ten days after the return of such list, the assessors and selectmen of the town shall meet in such place as shall be designated in such notice, and shall have the same power in relation to such list that the board of relief has in relation to the town list . . . ; and such list, when perfected by the assessors and selectmen, shall be lodged with the town clerk; and such valuation shall be the basis of taxation for such property by such district for the year ensuing."

The inquiry decisive of the effect of the defects complained of is whether they pertain to and affect conditions precedent to a legal tax. As the trial court stated in the memorandum of decision, "The answer depends on whether, on analysis, the provision appears to be inserted for the protection and information of

the taxpayer or is merely mechanical and directory. In the former case it is a necessary condition precedent, in the latter an irregularity which does not invalidate the tax." Cooley, Taxation (4th Ed.) Vol. 2, § 510, p. 1137, Vol. 3, § 1061; *Adams* v. *Seymour*, 30 Conn. 402; 26 R. C. L. p. 355. "The test is whether the provision is for the benefit and protection of the individual taxpayer. If it is, the provision is mandatory. . . ." "If the provision is mandatory it must be followed or the assessment will be invalid. . . ." Cooley, Op. Cit., § 1061, p. 2136. "All provisions designed to give [the taxpayer] an opportunity of a review of the assessment, whether by the assessors themselves or on appeal from their conclusions, are exclusively in his interest." Op. Cit., § 511, p. 1141. The provisions of § 1193 et seq. of the General Statutes concerning meetings of town boards of relief manifestly are of this nature. We have held, also, that the provision in what is now § 1141 of the General Statutes for the lodging of town assessment lists and an abstract thereof in the town clerk's office is for the general benefit of each inhabitant of the town, that he may by inspection ascertain whether, in his opinion, injustice has been done him, and if so, appeal to the board of relief for its correction, and that failure to return such an abstract as and when required invalidated the assessment. *Thames Mfg. Co.* v. *Lathrop*, 7 Conn. 550, 555. Compliance with such similar requirements as are applicable to district taxes must be regarded as conditions precedent essential to valid assessment.

It does not follow, however, that the entire taxes here involved are invalidated by the procedural deficiencies disclosed by the finding and upon which the defendant relies. It is clear from the statutory provisions already quoted (§§ 1210, 1256 and 1258) and

such others as pertain to taxation in and by districts such as this plaintiff that, except as to real estate situated partly in and partly outside the district (provided for in § 1256) and in cases of omissions from the town list and changes in title between the completion of that list and the laying of the district tax (provided for in § 1257), the district tax is to be based on the town assessment list. Outside of the special circumstances covered by §§ 1256 and 1257, all of the essential protections to which the individual taxpayer is entitled pertaining to the inclusion, valuation and taxation of his property are afforded through compliance by the town officials with the steps required by statute in the perfecting of the assessment list of the town, upon which the district tax, as well as that of the town, is laid. It is only in the special instances mentioned in §§ 1256 and 1257 when the town list is necessarily altered that there is need of further safeguards to the taxpayers affected by such changes, and this is supplied by the requirement in § 1256 for the return to the district clerk of a list of valuations placed by the assessor or assessors upon the parts of the real estate lying within the district, the meetings prescribed by § 1258 of the assessors and selectmen, for purposes and with powers analogous to those of the board of relief in relation to the town list, and the notices of the valuations and of the meetings which is prescribed in § 1256.

The record affords no indication that the procedure in the making of the town lists was not in all respects regular and complete. The district tax of the defendant, in each of the years here concerned, was laid upon the defendant's list of the town last before completed as to all the items of taxable property, with the exception of the item of "acreage," the identical valuations being adopted except that in 1931 and 1932

"$8300" was erroneously deducted from the item of manufacturing buildings and in 1933 and 1934 $1500 from the item of "machinery." The only item as to which the proceedings for town assessment were not applicable and adequate and to which the special requirements in §§ 1256 and 1258 of the General Statutes would attach is that of "acreage" which, in the town lists, included in one item all of the land of the defendant within the town and, in the district lists, likewise in one item, all of the lots assessed, both those wholly within and partly in and partly out of the district, so that the assessment based upon this item must be treated as entire. In the 1931 and 1932 lists the valuation placed thereon by the district was $2600, in 1933 and 1934 $864. As to this item, in common with all other valuations made under § 1256, the failure of the town assessors and selectmen to meet, as required by § 1258, is sufficient to invalidate a tax predicated thereon. Since there is no claim that any attempt was made to do so, there is no occasion to decide whether these omissions could be validated by legislative action, or whether provisions in the validating acts of 1933 and 1935 (Special Laws, 1933, No. 453, Special Laws, 1935, No. 518) availed to cure the failure of the assessors and selectmen to give the notices required by § 1256 and of the assessors to return to the district clerk the list provided for by the same section.

No compelling reason appears, however, why the entire taxes assessed upon all of the defendant's property must or should be invalidated because of the infirmities as to this one item. For the reasons above stated all that the defendant is entitled to is to have the assessments based upon the item of acreage adjudged illegal and void and its total taxes reduced by the amount levied thereon in each year. *Connecticut Light*

*& Power Co.* v. *Oxford,* 101 Conn. 383, 387, 126 Atl. 1; 273 Supreme Court Records and Briefs, pp. 217, 223.

There is error in the amount of the judgment, only. The case is remanded to the Superior Court with direction to amend the judgment by reducing the damages by the amount of the district tax on $2600 for each of the years 1931 and 1932, and $864 for 1933 and 1934, and by any interest on these sums which was included in the judgment.

In this opinion the other judges concurred.