[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The action was brought by the plaintiff, claiming money damages against defendants, Charles Burke and the United States Fidelity and Guaranty Company ("USFG"), which issued a probate bond as surety for Burke, who was appointed administrator of the estate of Beatrice M. Burke, a/k/a Beatrice Miller. Burke did not appear at trial to contest the plaintiff's claims.
Based on a preponderance of the evidence, the court finds the following facts proven: On April 13, 1987, Beatrice Miller died. On the following day, Burke filed an application for appointment as administrator of her estate, in which he represented that he was her spouse, that he resided at 876 Campbell Avenue, West Haven, Connecticut, was her sole heir at law, and that she left no will and died intestate.
On April 20, 1987, Burke obtained a probate bond from Roy P. Redding of Redding Insurance Associates, in West Haven, Connecticut. The surety on the bond, in the amount of Fifty Thousand ($50,000.00) Dollars, was USFG. Burke obtained the bond by representing that he was the decedent's spouse and that he would be appointed as the administrator of her estate. The bond contains the following language: CT Page 6665
 As appears in the records of this court, the above principal has been: appointed to the POSITION OF TRUST as above indicated and appeared in court and accepted said trust.
On April 21, 1987, the Probate Court appointed Burke as administrator of the estate. On July 7, 1989, Burke filed with the Probate Court an Affidavit of Heirs representing that he was the decedent's spouse and only surviving relative.
In January, 1988, Burke filed a sworn inventory showing the value of the decedent's property to be One Hundred and Sixty-Four Thousand ($164,000.00) Dollars, including real estate at 876 Campbell Avenue, West Haven, worth One Hundred and Fifty Thousand ($150,000,000) Dollars. The inventory showed the assets of the decedent at the time of her death to consist of an automobile valued at Two Thousand ($2,000.00) Dollars, a business valued at Twelve Thousand Five Hundred ($12,500.00) Dollars, as well as the real estate. The statements in the inventory constitute an admission for all purposes against both the principal, Charles E. Burke, and the surety, United States Fidelity and Guaranty Company. Based on that admission, the value of the real estate as of the date of death is found to be $150,000.00. After filing a Statement in Lieu of Account, Burke closed the estate and received a Certificate of Descent placing the real estate in his own name.
On October 7, 1988, Burke mortgaged the real estate to North American Bank Trust Company but failed to make the monthly payments on the mortgage note. The bank began foreclosure proceedings on May 22, 1989. From the time of decedent's death in April of 1987 to a time in late 1989 or early 1990, Burke continued to receive and cash the decedent's social security checks until he was finally apprehended. Ultimately he was convicted of bank fraud and forgery. At the time of his apprehension, he also admitted that he had never married the decedent, leading to the discovery that the plaintiff, J. Arthur Wells, was the nephew and sole heir of Beatrice Miller. Upon application to the West Haven Probate Court, Burke was removed as administrator, his Certificate of Descent to the real estate was revoked and Wells was appointed administrator, d.b.n.
The only asset remaining in the estate was the reel estate at 876 Campbell Avenue which was being foreclosed. The lender had acquired a Title Insurance Policy from Connecticut Attorneys Title Insurance Company at the time Burke obtained the mortgage. Claim was made against Connecticut Attorneys Title Insurance Company by the foreclosing lender which agreed to pay the sum of Ninety Thousand ($90,000.00) Dollars, less Twenty Thousand ($20,000.00) Dollars in encumbrances on the property when Burke mortgaged it. CT Page 6666 The value of Ninety Thousand ($90,000.00) Dollars was derived from an appraisal made on March 14, 1990. J. Arthur Wells received the sum of Seventy Thousand ($70,000.00) Dollars.
The plaintiff was the nephew of Beatrice Miller. Mrs. Miller's husband and child both predeceased her leaving Mr. Wells as her only surviving relative. Mr. Wells had not seen his aunt in approximately twelve and a half years prior to her death and became aware of her death only by reading the New Haven Register. The plaintiff did not take any steps to determine what, if any, estate Mrs. Miller left and whether he was the appropriate administrator of her estate.
The plaintiff was contacted by Attorney Dennis Donahue in February of 1990 and advised that certain assets had been transferred to Burke. Attorney Donahue further advised Mr. Wells that Mrs. Miller had owned a house on Campbell Avenue in West Haven which was being foreclosed.
After the plaintiff was appointed administrator d.b.n. he filed an inventory which valued the defendant's property as of the date of death at Ninety Thousand ($90,000.00) Dollars, less a Twenty Thousand ($20,000.00) Dollar encumbrance. He also filed a succession tax return with the Department of Revenue Services listing the gross taxable estate at Seventy Thousand ($70,000.00) Dollars. According to Joseph Crego, a real estate appraiser, the real estate was worth approximately One Hundred Twenty-Five Thousand ($125,000.00) Dollars at the date of Mrs. Miller's death. There was no evidence as to the value of a 1982 Subaru or a travel agency which the decedent allegedly operated.
On June 5, 1990, the plaintiff applied to the Probate Court to sell the real property in the estate by private sale for the sum of Seventy Thousand ($70,000.00) Dollars.
The plaintiff sustained the following losses:
 A. Loss in Value of Property in Estate: Value of Estate at date of Death of Decedent:
 1982 Subaru Automobile . . . . . . . . . . . . . $2,000.00 Travel Business . . . . . . . . . . . . . . . . . 12,500.00 Real Estate at 876 Cambell Ave., West Haven . . . 150,000.00 Total . . . . . . . . . . . . . . . . . . . . . . $164,500.00
 Less amount received from sale of property acquired by plaintiff from estate . . . . . . . . $90,000.00 . . . . . . . . . . . . . . . . . . . . . . . . . $ 74,500.00
B. Loss of Rental Income from Real Estate: CT Page 6667
(May 1, 1987 to January 31, 1990)
 1st floor — $500.00 per mo. x 33 mos. . . . . . . $16,500.00 2nd floor — $650.00 per mo. x 33 mos. . . . . . . 21,450.00 Office Space — $350.00 per mo. x 33 mos. . . . . 11,500.00 Total Rental Income Value . . . . . . . . . $49,500.00
C. Unpaid Charges Against Real Estate Paid by Plaintiff:
 Back Taxes on real estate . . . . . . . . . . . . $5,046.84 Unpaid Water Charges . . . . . . . . . . . . . . 1,288.46 Unpaid fuel bill — attachment . . . . . . . . . . 600.00 Total . . . . . . . . . . . . . . . . . . . $6,935.00
D. Interest on Late Payment of Succession Tax . . $988.20
$131,923.50
The principal issues in this case, in which the plaintiff seeks recovery on the probate bond against USFG, in addition to recovery against Burke, are: (1) whether the bond was valid or, as USFG claims, void ab initio because Burke, the principal, was not what he represented himself to be; (2) whether the plaintiff is estopped from claiming the value of the estate to be more than that claimed in his own inventory; (3) whether the plaintiff, by not acting sooner, waived any claim of mismanagement by Burke.
VALIDITY OF PROBATE BOND
Connecticut General Statutes 45-34a provides as follows:
 (a) As used in this title, except as otherwise provided, "bond" or "probate bond" means a bond with security given to secure the faithful performance by an appointed fiduciary of the duties of his trust and the administration of and accounting for all moneys and other property coming into his hands, as fiduciary, according to law.
 (b) Except as otherwise provided, every bond or probate bond shall be payable to the state, shall be conditioned for the faithful performance by the principal in the bond of the duties of his trust and the administration of and accounting for all moneys and other property coming into his hands, as fiduciary, according to law, and shall be in such amount and with such security as shall be required by the judge of probate having jurisdiction pursuant to rules CT Page 6668 prescribed by the supreme court. If bond is required of a fiduciary, his appointment shall not be effective until the bond has been accepted by the court of probate.
Section 45-50 provides in pertinent part:
 (a) Any person claiming to be aggrieved by the breach of a probate bond, as representative of the estate in connection with which the bond was given, or in his own right or in the right of himself and all others having an interest in the estate, may bring an action to recover for the breach in his own name under the following conditions: (1) before bringing the action, the person shall secure the consent of the judge of the court of probate in which the bond was given; . . .
USFG claims, in essence, that Burke was not entitled to be appointed administrator, the conditions of C.G.S. 45-195(c)(1)(F) not having been satisfied. Thus, USFG reasons, the appointment Of Burke was void ab initio and under Hayden v. Smith, 49 Conn. 83
(1881), the bond is void. USFG cites no other authority to counter the plain language of the bond and statutes pertaining to probate bonds.
As the plaintiff points out, Hayden is distinguishable from the present case. A reading of Hayden reveals that a form of bond designed for use in decedents' estates was improperly used in a conservatorship estate. Because the bond referred only to decedents' estates, continually using the word "deceased", making no reference to the estate of an incapable person, the court found that "taken all together we cannot regard the condition of the bond as anything better than an unmeaning collection of words", and found it to be void for uncertainty. That is not the situation in the present case. The USFG bond is in the proper form for a decedent's estate and, in fact, the answer filed by USFG admits paragraphs 1 and 3 of the Complaint which allege both the bond and the condition of the bond, i.e., that Burke would faithfully discharge his duties as administrator of the estate according to law.
There is no basis in fact or law for the court to declare the bond void ab initio.
ESTOPPEL OF PLAINTIFF
The next argument raised by USFG is that, because the plaintiff executed a probate inventory, under oath, stating that CT Page 6669 the value of the decedent's estate at her date of death was Seventy Thousand ($70,000.00) Dollars, as well as a succession tax return listing the gross taxable estate to be Seventy Thousand ($70,000.00) Dollars, and is thereby estopped from claiming that the value of the estate is more than that amount. This argument has no merit. The evidence revealed that the plaintiff adopted those values in recognition of the ultimate sale price of the real estate which was being foreclosed and as a result of discussions with the officials of the Tax Department of the State of Connecticut, in an effort to reflect the current situation in a realistic manner after the Burke administration. Under the circumstances, the values adopted by Wells in the inventory and succession tax return do not constitute admissions by the plaintiff nor is he estopped from asserting his claim.
WAIVER OF PLAINTIFF'S CLAIM
The final argument by USFG is that, because the plaintiff did not act to be appointed administrator promptly after the decedent's death, he waived any right to claim against the bond based on Burke's malfeasance. USFG cites as authority Bassett v. City Bank and Trust Co., 116 Conn. 617 (1933), and Rocky Hill, Inc. District v. Hartford Rayon Corporation, 122 Conn. 392 (1937). The plaintiff cannot be deemed to have been aware of all his rights immediately upon the death of the decedent. There is no authority cited for the proposition that a potential heir is under a duty to act promptly to assert his position as fiduciary or be deemed to have waived his right in the event of fraudulent actions on the part of another. Burke filed his own application for appointment the day after the decedent's death. The plaintiff did not learn of Burke's actions until several years later, at which time he acted promptly to attempt to salvage the estate. The claim that the plaintiff waived his rights or is estopped from presenting them finds no support in law or the facts.
DAMAGES
The plaintiff has established the following damages:
 A. Value of Estate at decedent's death: . . . . . . $164,500.00 Less amount received from sale of real estate . . . . . . . . . . . . . . . . $90,000.00 . . . . . . . . . . . . . . . . . . . . . . . $74,500.00
 B. Loss of Rental Income . . . . . . . . . . . . . $49,500.00 C. Unpaid charges paid by plaintiff: . . . . . . . $6,935.30 D. Interest on Succession Tax: . . . . . . . . . . $988.20
Total . . . . . . . $131,923.50 CT Page 6670
It is clear that the liability of a surety is coextensive with that of the principal. Wattles v. Hyde, 9 Conn. 8, 14
(1831). However, USFG is liable only to the extent of Fifty Thousand ($50,000.00) Dollars, the amount of the bond. Accordingly, judgment may enter against the defendant, Burke, in the amount of One Hundred and Thirty-One Thousand, Nine Hundred Twenty Three Dollars and Fifty Cents ($131,923.50) and against the defendant, USFG, in the amount of Fifty Thousand ($50,000.00) Dollars.
BARRY R. SCHALLER, Judge