[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ONCOUNTS ONE AND TWO
Before the court are motions from both the plaintiff and the defendants for summary judgment on counts one and two of the complaint. These counts concern the grand list of October 1, 1990. As set forth in the complaint, the plaintiff's contentions are two-fold. First, the plaintiff claims that the audit and hearing conducted by the assessor on behalf of the city of the plaintiff's personal property in 1993 was not sanctioned by Gen. Stat. § 12-53(b) and therefore the resultant (and retroactive) tax increases are void. Second is the claim that the tax increases are also void because the assessor did not give notice of them to the plaintiff within thirty days of the hearing or an adjournment thereof as required by Gen. Stat. § 12-53(c).
At the suggestion of the court, the parties on December 12, CT Page 11 1995 filed a stipulation of facts. The numbered facts set forth below detailing the activity of the plaintiff and the defendants are represented to be undisputed.
1. Plaintiff the United Illuminating Company ("UI") is a Connecticut corporation that is a public service company supplying electric power to customers in New Haven and Fairfield Counties. Defendant City of New Haven ("City") is a municipal corporation, defendant Gerald E. Sachs was the duly appointed tax assessor for the City of New Haven (the "Assessor") during the relevant time period, and defendant Salvatore Calderaro was the City's duly appointed tax collector ("Tax Collector") during the relevant period.
2. On or before November 1, 1990, UI filed with the Assessor its list of personal property that showed a valuation for assessment purposes of its personal property (except motor vehicles) of $92,079,800. The Assessor included all such listed personal property on the Grand List of personal property for October 1, 1990 ("the October 1, 1990 Grand List") at the same value, and in or about February, 1991, the Assessor lodged the October 1, 1990 Grand List in the office of the Town Clerk as required by Section 12-55 of the Connecticut General Statutes.
3. The Collector rendered bills to UI for taxes levied with respect to the October 1, 1990 Grand List on the basis of the values set forth in UI's list of personal property, and UI made timely payment of those bills in full.
4. In a letter dated September 20, 1993, the Assessor advised UI, among other things, that pursuant to Section 12-53(b) of the Connecticut General Statutes, he was scheduling a hearing for September 29, 1993. (A copy of the September 20, 1993 letter is attached as Exhibit 1 to UI's March 7, 1995 Memorandum and as Exhibit 1 to the City's June 19, 1995 Memorandum).
5. On September 29, 1993, the Assessor held the hearing at which UI employees testified as to the methods used for valuing personal property listed by UI in its personal property lists for October 1, 1990, October 1, 1991, and October 1, 1992.
6. By letter dated October 12, 1993, the Assessor notified UI that the hearing "is hereby concluded." (A copy of the October 12, 1993 letter is attached as Exhibit 2 to UI's March 7, 1995 Memorandum and as Exhibit 2 to the City's June 19, 1995 CT Page 12 Memorandum).
7. On or about October 31, 1993, UI received from the Tax Collector three tax bills, each with an accompanying letter. (The three tax bills and accompanying letters are attached as Exhibit 3 to the City's June 19, 1995 Memorandum). The three tax bills set forth a total of $6,315,614.96 of additional taxes alleged to be due for the October 1, 1990 Grand List.
8. The three tax bills were based on an increase in the value of UI's personal property on the 1990 Grand List that had previously been declared by UI and included by the Assessor on the 1990 Grand List. Such increase in valuation resulted in an increased assessment (after 70% equalization) of UI's personal property from $92,079,800 to $143,416,860.
9. UI received no written communication from the City in the 30 days following October 12, 1993 other than the three tax bills and accompanying letters dated October 31, 1993.
10. UI commenced this action in late December, 1993, claiming that the tax bills were illegal.
11. On March 11, 1994, UI appeared at the Board of Tax Review asking that the bills be declared illegal, which relief was denied.
 I.
The standard for the issuance of a summary judgment is well established. A summary judgment shall be granted if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Practice Book § 384; Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 578 (1990). In this case the standard is satisfied as the stipulation removes any dispute as to the facts leaving the issue one of statutory construction a traditional question of law.Starr v. Commissioner of Environmental Protection, 226 Conn. 358,372 (1993). The specific question here is which side has properly interpreted §§ 12-53(b) and (c).
Although §§ 12-53(b) and (c) are the sections at issue, the language of §§ 12-53(a) and 12-55(a) and (b) as well will be helpful in deciding the question of proper construction. CT Page 13 The texts of all of these sections read as follows:
§ 12-53(a)
 During the period prescribed by law for the completion of their duties the assessor or board of assessors of each town shall add to the list given in by any person and made according to law any taxable property which they have reason to believe is owned by him and has been omitted from such list, and property so added shall be assessed at the percentage of the actual valuation thereof, as determined by the assessor or board of assessors in accordance with the provisions of sections 12-63, 12-64 and 12-71, from the best information the assessor or board of assessors can obtain, and twenty-five per cent of such assessment shall be added thereto. The assessor or board of assessors shall notify such person, in accordance with section 12-55, of any such increase in the assessed valuation.
 § 12-53(b)
 If the assessor or board of assessors of any town believe that taxable property has been omitted from the list given in by any person or that taxable property belongs to any person who has not given in a list, or if the assessor or board of assessors are unable to determine the value of any property without the assistance of the owner, custodian or other person having knowledge of the same, they may give notice in writing to the owner, custodian or other person having knowledge of any such property or the valuation thereof, of the time and place of a hearing with respect thereto. Such notice, shall, within three years after the due date for the filing of such list or within three years after the date on which such list is received by the assessor or board of assessors, if later, be placed in the hands of such person or left at his usual place or residence or CT Page 14 business or shall be sent to him by registered or certified mail at his last-known place of residence or business. Such notice shall direct the person named therein to appear before the assessor or board of assessors with books of account, papers, documents and other records for examination under oath relative to any such property or the valuation thereof. All omitted taxable property, discovered at such hearing or any adjournment thereof and not listed by the owner as required by law, shall be added to his list by such assessor or board of assessors at the percentage of its actual valuation, as determined by the assessor or board of assessors in accordance with the provisions of sections 12-63, 12-64 and 12-71, and twenty-five per cent of such assessment shall be added thereto. Subject to the provisions of sections 12-57 and 12-129, if any property is discovered at such hearing or any adjournment thereof to be listed in error by the owner, it shall be removed from such owner's list by the assessor or board of assessors. No person shall be excused from giving testimony or producing books of account, papers, documents and other records on the ground that such testimony and such production of documents will tend to incriminate him, but such testimony and such production of documentary evidence shall not be used in any criminal proceeding against him. Any person who fails to appear at the time and place of such hearing in such notice designated or at any adjournment thereof, or, having appeared, refuses to answer any pertinent question put to him or who fails to produce the books, papers or other documents mentioned in such notice, shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both. All property which the assessor or board of assessors believes should have been listed for taxation and was not listed and concerning which sufficient information cannot be obtained by them at such hearing, or any adjournment thereof, shall be added to the list at such percentage of the actual valuation thereof from the best information obtainable by the assessor or board of assessors and twenty-five percent shall be added to CT Page 15 such assessment.
 § 12-53(c)
 If the assessor or board of assessors of any town adds property to the list of any person or makes out a list for any person not filing a list or increases or decreases the valuation of any taxable property under the provisions of subsection (b), they shall, within thirty days of such hearing or any adjournment thereof give him notice thereof in writing by mailing the same, postage prepaid, to his last-known address and the same shall be held to be sufficient.
 § 12-55(a) and (b)
 Lists; notice of increase; public inspection; abstracts. (a) When the lists of any town have been so received or made by the assessor or board of assessors, they shall equalize the same, if necessary, and make any assessment omitted by mistake or required by law. The assessor or board of assessors may increase or decrease the valuation of property as named in any of such lists or in the last-preceding grand list, but, in each case of any increase in valuation of such property above the valuation, if any, stated by the person filing such list or in each case of any increase of valuation above the valuation of such property in the last-preceding grand list, except with respect to the valuation of any motor vehicle, they shall send written notice by mail of such increase in accordance with subsection (b) of this section, including in such notice the valuation prior to and after such increase with respect to each parcel of real property or any improvement thereon, the valuation of which has been increased, to the last-known address of the person whose list or valuation is so changed. When such lists have been so completed, the assessor or board of assessors shall arrange such lists in alphabetical order and lodge the same, except as otherwise specially provided by CT Page 16 law, in the town clerk's or assessors' office, on or before the thirty-first day of January, for public inspection. Such assessor or board of assessors shall make an abstract of such lists, including the twenty-five percent added thereto, shall take and subscribe the oath provided by law, which shall be certified by the officer administering the same and endorsed upon or attached to such abstract, and, except as otherwise specially provided by law, shall lodge such abstract in the town clerk's office, on or before the thirty-first day of January next after the date prescribed for the filing of such list, for public inspection. Any assessor or board of assessors of any town who fails to comply with any provision of this section shall be fined five dollars.
 (b) The written notice of assessment increase as required in subsection (a) of this section shall be mailed on or before the tenth day immediately following the date on which the grand list abstract is signed and attested to by the assessor or board of assessors. If such assessment increase notice is sent later than the time period herein prescribed, such increase shall become effective on the next succeeding grand list.
 II.
Apparently there is no appellate jurisprudence interpreting §§ 12-53(b) and (c) after these sections were amended in 1986 by Public Act 86-84. This court, in developing its conclusions, is not, however, writing on a clean slate as there are Superior Court decisions by Judges Thim and William Sullivan and former judge Robert Fuller. In general, it may be said that the plaintiff relies on these cases while the defendants distinguish them and prefer to concentrate on legislative history and action taken by the Office of Policy and Management.
Taking these decisions in chronological order, the oldest isBridgeport Electric Co. v. City of Bridgeport,9 Conn. L. Rptr. No. 8, 235 decided by Judge Thim in 1993. When ruling on a motion to strike, Judge Thim noted a distinction between §§12-53(a) and (b). "Subsection (a) governs actions of assessors in adding CT Page 17 taxable property to the list of a taxpayer for the current tax year. Subsection (b) governs actions of assessors in adding property to any prior list. For an assessor to add property to a prior list, the assessor must hold a hearing under subsection (b)." Id. at 236.
Next is former Judge Fuller's decision in Hubbell,Incorporated v. Board of Tax Review, 10 Conn. L. Rptr. No. 10, 324 also rendered in 1993. The factual situation in Hubbell was that the plaintiff had appealed from the defendant's determination not to reduce the assessor's valuation of the plaintiff's personal property on the grand lists of 1989, 1990 and 1991. While the appeal was pending, the assessor notified the plaintiff of a hearing pursuant to § 12-53 for those years and subpoenaed various records and documents. The opinion analyzes § 12-53(b) in relation to other statutes dealing with assessors, boards of tax review and appeals to the court. In granting the plaintiff's motion to quash the subpoena, the court reasoned that since the assessor had already decided the value of the plaintiff's property on the grand lists at issue, § 12-53(b) was no longer applicable. "It covers the situations where the taxpayer failed to list property for taxation or the assessor is unable to determine the value of property which has been disclosed. The purpose of the hearing is to determine the value of property so the assessor can add it to the list." Id. at 325.
Following Hubbell, Incorporated v. Board of Tax Review, supra
is Integrated Systems v. Southbury, 15 Conn. L. Rptr. No. 2, 60 decided in June, 1995 by Judge Sullivan. The case presents a fact pattern similar to Hubbell in that during the pendency of a tax appeal the local assessor, acting by authority of § 12-53(b) initiated an audit of the same property of the plaintiff as was involved in the appeal. In granting a motion to enjoin and quash, Judge Sullivan stated, Id. at 61, that the interpretation of § 12-53(b) in Hubbell was consistent with the plain language of the statute.
The last decision, another from Judge Thim, concerns a tax appeal and an equitable action entitled Southern Connecticut GasCompany v. Bridgeport, 15 Conn. L. Rptr. No. 8, 278 (1965). The finding in the case demonstrates once again the familiar scenario where an assessment was increased, predicated upon § 12-53(b), after taxes based upon the initial assessment had been levied and either paid or appealed. In granting the taxpayer's motions for summary judgment, Judge Thim agreed with the prior CT Page 18 holdings in stating that "[§ 12-53(b)] does not authorize the assessor . . . to increase or decrease the valuation of property after the grand list has been completed and filed." Id.
at 280. Judge Thim did find, however that an ambiguity exists when §§ 12-53(b) and 12-53(c) are compared. This ambiguity is discussed in the next section.
The defendants have argued that because of their facts, theHubbell and Integrated Systems decisions are inapposite to the present situation. Presumably the same contention would be made for the Southern Connecticut Gas cases. Specifically, the defendants' principal claim is that in this instance the defendant assessor made no decision regarding the value of United Illuminating Company's personal property but only published the value as reported in the taxpayer's declaration later claimed to be undervalued. The court disagrees. The strength of these decisions comes not only from their almost uniform interpretations of § 12-53(b) but also from the manner in which § 12-53(b) is related to other statutes that govern the reporting, assessment and valuation of property that is subject to taxation.
This relationship which governs the interaction between the assessor and the taxpayer is best shown by repeating and supplementing the statutes cited in Hubbell, supra. Gen. Stat. § 12-40 requires that the assessor publish a notice on or before October 15th for taxpayers to file their written lists of taxable property belonging to them on October 1st. Gen. Stat. § 12-42 requires that verified lists be filed on or before November 1st. Gen. Stat. § 12-53(a) empowers an assessor to add omitted property to a taxpayer's list before the assessor complete his duties. Gen. Stat. § 12-55(a) authorizes an assessor to "equalize" a taxpayer's list by adding omitted property and by increasing or decreasing the valuations of any listed property and, further, to arrange the lists alphabetically and have them filed for public inspection as a grand list in the town clerk's office on or before January 31st. After the filing, according to National CSS, Inc. v. Stamford, 195 Conn. 587, 594
(1985) and the cited decisions, the assessor's authority to change valuations ceases as that function is transferred to the board of tax review pursuant to Gen. Stat. §§ 12-110 — 12-115.
 III.
This court agrees with Judge Thim's conclusion that an CT Page 19 ambiguity exists when §§ 12-53(b) and 12-53(c) are juxtaposed. Although these sections have been fully quoted,infra, some repetition and paraphrasing of their provisions is desirable — at this juncture.
Subsection (b) provides for a hearing, notice of which is to be given within three years after the due date for the filing of a taxpayer's list or within three years after the date the list was received, if later, in three instances: to discover taxable property omitted from the list, to discover taxable property where a list has not been filed or in situations where the assessor is unable to determine the value of any property without the assistance of the owner or another knowledgeable person. Subsection (b) then continues by authorizing the assessor to add to or make a taxpayer's list by including all property that the assessor believes should have been listed for taxation and was not so listed. Such added property shall be assessed at the uniform percentage of actual value determined by the assessor from the best information available. The assessment, as determined, shall be increased by 25% as a penalty. See NortheastDatacom, Inc. v. Wallingford, 212 Conn. 639, 651 (1989).
Subsection (c), on the other hand, provides for notice to be given to the affected party whenever the assessor adds property to a list or makes out a list for a nonfiling party or increases or decreases the valuation of any taxable property pursuant to the provisions of subsection (b). The point of the ambiguity is that although § 12-53(b) refers to a hearing when the assessor believes that taxable property has not been reported or the assessor is unable to ascertain a value for property, it authorizes only the addition of property to a taxpayer's list when such has been omitted therefrom. What this means, facially at least, is that § 12-53(c) requires notice from the assessor of something that § 12-53(b) does not empower the assessor to do.
In construing a statute, the court is required to ascertain the intent of the legislature and to interpret the statute in a manner that effectuates the legislative intent.Carpenteri-Waddington, Inc. v. Commissioner of Revenue Services,231 Conn. 355, 362 (1994). If the words in a statute are plain and unambiguous, there is no need to look further for guidance because it is assumed that the legislative intent is expressed in the words themselves. Caltabiano v. Planning Zoning Commission,211 Conn. 662, 666 (1989). Where a statute is found to be CT Page 20 ambiguous, however, the principles governing construction require the court to look at the wordage of the statute, the legislative history and circumstances surrounding its enactment, the legislative policy it was designed to implement and to its relationship with existing legislation and common law principles governing the same general subject matter. No one of these factors is invariably controlling. Carpenter-Waddington, Inc. v.Commissioner of Revenue Services, supra.
Two Public Acts, of fairly recent origin, 84-477 and 86-84 have amended Gen. Stat. § 12-53. In Public Act 84-477
entitled "An Act Extending The Time In Any Assessment Year When Assessors May Audit And Make Additions To Personal Property Tax Lists For Such Year," three changes were made to § 12-53(b): service of the notice of the hearing was changed from "at least ten days before the date prescribed by law for the completion of the assessor's duties" to "at least ten days before the end of the assessment yearn; the word "added" replaced the words "set in" so that the appropriate sentence read "[a]ll omitted taxable property discovered at such hearing . . . and not listed by the owner as required by law, shall be added to his list . . . ."; a sentence was added governing the removal from a taxpayer's list of property discovered at the hearing to have been listed in error. For § 12-53(c) a change similar to the first one in § 12-53(b) was made so that the language became "[i]f the assessors . . . add property to the list of any person or make out a list for any person not filing a list under the provisions of either or both of subsections (a) and (b), they shall on or before the end of the assessment year give him notice thereof. . . ."
When Public Act 84-477, as Senate Bill 596, was before the General Assembly's joint committee on Fiance, Revenue and Bonding the members were addressed by Charles Aglee from the Connecticut Association of Assessors. Mr. Aglee said that what is sought with this proposed law is to extend the time in which we can perform audits so that it would be throughout the assessment year" instead of November, December and January as the statute currently provides. 1984 Joint Standing Committee Hearing-Finance, Revenue Bonding, part 2 at 561-68. In the Senate,Public Act 84-477 was adopted after being placed on the consent calendar. 1984 Connecticut Gen. Assembly, Senate Proceedings vol. 27 Part 6 at 2268-70, 2314. Preceding adoption in the House, Representatives Ryan and Gelsi noted that local assessors had asked for the legislation. 1984 Connecticut Gen. Assembly House CT Page 21 Proceedings, vol. 27, Part 19 at 500-06.
The title of Public Act 86-84 is "An Act Concerning Time For Audits of Personal Property Assessment Lists, Notice Requirements, Valuation Procedure And Computation Of Interest Related To Additions By The Assessor To Taxpayer's List. Substantively the 1986 act amended the requirement of notice of the hearing in § 12-53(b) by replacing "at least ten days before the end of the assessment year" with "within three years after the due date for the filing of such list or within three years after the date on which such list is received by the assessor . . . if later."
With respect to § 12-53(c), one change resulting fromPublic Act 86-84 was the inclusion of "or increase or decrease the valuation of any taxable property under the provisions of subsection (b)" among the actions of the assessor at or after the hearing for which notice has to be given. This addition, as noted earlier promoted the ambiguity that both Judge Thim and this court have found., The other change was to require the post-hearing notice to be given within thirty days of such hearing or any adjournment thereof.
Verbatim copies of the legislative procedures pertaining to both public acts have been supplied by the defendants. At the public hearing conducted by the joint committee on Finance, Revenue Bonding for Senate Bill No. 402 which ultimately becomePublic Act 86-84, Edwin Selden from the Office of Policy and Management stated that lengthening the period in which an audit could be performed from one to three years would not impose any additional burdens on businesses. When questioned by Representative Emmons, Mr. Selden explained that records had to be kept for three years for federal IRS purposes. Albert Adams, the Legislative Chairman for the Connecticut Association of Assessing Officers recommended favorable consideration of the bill as did Charles Feldman, a personal property auditor for the City of New Haven. Mr. Feldman described what he termed the worst possible scenario: an audit made increasing the assessment of a company that has underreported for several years; the assessment is adjusted but the penalty can be assessed for only the current grand list; the prior years of noncompliance go untouched. In response to Representative Gelsi's question of is "there no way currently that you could bring that corporation to court for fraudulent taxes?", Mr. Feldman answered "only for one year, for the current list that we file on. Representative Gelsi then CT Page 22 "[m]aybe we should look at that provision also." Representative Emmons stated "[t]hat's coupled into the bill." Hearing on Senate Bill 402 before Joint Standing Committee on Finance, Revenue and Bonding, 1986, Part 1, pp. 321-324, 363, 376-378.
The public hearing was the only forum where the proposed legislation was discussed. In the Senate the bill was passed after the following remark by Senator McLaughlin: "This bill will allow an audit of personal property to be done, in effect over the past three years, rather than just the past year. It has been requested by the Board of Assessors, and has the support of the Property Review Tax Sub-committee. And it would basically allow us to do just what the Internal Revenue Service does now." Connecticut General Assembly, Senate Proceedings, Vol. 29 Part 3 pp. 1009-1010 (1986) In the House, the bill was enacted after being placed on the consent calendar. Id. House Proceedings, Vol. 29 Part 6 pp. 1826-27, 2033.
Although a statute's legislative history is in general restricted to comments and discussions on the floor of the Senate or the House of Representatives, testimony before a legislative committee should also be considered when such testimony provides particular illumination for subsequent legislative action on the proposed bill. Elections Review Committee of the Eighth UtilitiesDistrict v. FOIC, 219 Conn. 685, 695 n. 10 (1991). In the court's view neither the testimonies from the persons who appeared before the committee nor the comments of the legislators thereat nor the subsequent remarks of Senator McLaughlin on the Senate floor resolve the ambiguity existing between §§ 12-53(b) and 12-53(c) regarding listed property upon which taxes have previously been levied and paid. It is not what the legislature meant to say but in what the legislature did say that is relevant. Hayes v.Smith, 194 Conn. 52, 57-58 (1984).
For several reasons the conclusion that an ambiguity exists is not dispelled by language in the Handbook for ConnecticutAssessors concerning post-audit changes in assessments for declared but under-reported personal property. The handbook is sponsored by the Connecticut Association of Assessing Officers, the Institute of Public Service of the University of Connecticut and the Office of Policy Management, the only governmental agency involved. The court's understanding of the defendants' claim is that the language in the handbook represents the construction of §§ 12-53(b) and 12-53(c) by Policy Management, an "enforcing agency." The rule in Connecticut is CT Page 23 that when faced with different but equally plausible interpretations of a statute, a court should give due deference to the construction placed upon the statute by the agency charged with its enforcement. Starr v. Commissioner of EnvironmentalProtection, 226 Conn. 358, 372, 376 (1993). In this case, however, there is no basis for applying the rule because there are not two plausible alternatives. The increase/decrease language in § 12-53(c) is not a separate grant of authority but, rather, is expressly dependent upon § 12-53(b) which, as heretofore noted, lacks any provision for increasing a property's value when the property has been listed, assigned a value and the tax levied on that value has been paid. Moreover, a review of the statutory scheme for municipal property tax assessment §§ 12-40-12-121cc, demonstrates that the Office of Policy Management is not an enforcing agency, see Lieberman v.State Board of Labor Relations, 216 Conn. 253, 262 (1990), although it has some supervisory powers over local assessors.E.g. §§ 12-61, 12-62(e). Finally the deference rule should be applied only sparingly whenever an agency's interpretation of a statute has not been subjected to appellate judicial scrutiny.See Lieberman, supra; Schlumberger Technology Corporation v.Dubno, 202 Conn. 412, 423 (1987).
Because §§ 12-53(b) and 12-53(c) are sections that involve authority to impose a tax, any ambiguity in them must be resolved in favor of the taxpayer. Kelly-Springfield Tire Co. v.Bajorski, 228 Conn. 137, 141-42 (1983). A municipality does not have any power of taxation except as expressly granted by the legislature and, for this reason, its ability to tax can be lawfully exercised only in strict conformity to the terms by which it was given. Pepin v. Danbury, 171 Conn. 74, 83 (1970). Since an ambiguity has been found upon a comparison between §12-53(b), § 12-53(c), these sections must be construed in the plaintiff's favor. The court must conclude that the assessor in 1993 lacked authority to increase the assessments of the plaintiff's properties on the grand list of 1990. The increased taxes engendered by such activity are therefore, void.
 IV.
Remaining to be considered is the plaintiff's alternative claim under § 12-53(c) that the increased assessment is illegal for the reason that the assessor failed to give written notice of it within thirty days after the hearing was concluded. A similar claim that no hearing was held as required by § CT Page 2412-53(b) was asserted in Hubbell, Incorporated v. Board of TaxReview, supra at 325. Former judge Fuller, on the authority ofQuinebaug Reservoir Co. v. Union, 73 Conn. 294, 299 (1900), rejected the claim stating that "the failure to hold a hearing was waived when the plaintiff appealed to the board of tax review."
The plaintiff's claim of contrary authority comes from RockyHill Incorporated District v. Hartford Rayon Corporation,122 Conn. 392 (1937) where the district had taxed as one unit land of the taxpayer located partly within and partly without its borders. This error apparently resulted from the failure of the assessors to meet with the selectmen. A pro tanto reduction in the tax was ordered. In discussing defects that could constitute conditions precedent to a legal tax, however, our Supreme Court at page 403, citing 3 Cooley, Taxation (4th ed.) § 1061 p. 2136 said "The test is whether the provision is for the benefit and protection of the individual taxpayer. If it is, the provision is mandatory. . . . If the provision is mandatory it must be followed or the assessment will be invalid. . . . "and from 2 Cooley, Op. cit. § 511 p. 1141 "All provisions designed to give [the taxpayer] an opportunity of a review of the assessment, whether by the assessors themselves or on appeal from their conclusions are exclusively in his interest. "
Later cases show that Quinebaug Reservoir Co. v. Union, supra
and Rocky Hill Incorporated District v. Hartford Rayon Co., supra
are not in conflict. The court agrees with the plaintiff that the notice requirement of § 12-53(c) is a mandatory duty of the assessor and was not satisfied by the tax collector's bills. But the purpose of the notice is obviously related to the appeals to the board of tax review and to the Superior Court provided for in § 12-53(d). A failure to give personal notice to a specific individual is not a jurisdictional defect. Lauer v. ZoningCommission, 220 Conn. 455, 462 (1991). A lack of personal notice may be waived by the party entitled to it. Id.; Schwartz v.Hamden, 168 Conn. 8, 15 (1975). As in Quinebaug Reservoir Co. v.Union, supra, the plaintiff waived its right to complain about lack of notice when it took a timely appeal to the New Haven Board of Tax Review.
 V.
Since the plaintiff has established one of its two contentions, its motion for summary judgment as to counts one and CT Page 25 two is granted. Consequently, the defendants' motion must be denied.